**SAFEWAY STORES, INC., Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 400, Defendant.**

**Civ. A. No. 84–0185.**

United States District Court, District of Columbia.

March 28, 1985.

---

Richard C. Hotvedt, Eric A. Sisco, Washington, D.C., for plaintiff.

William W. Thompson, II, Arlington, Va., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment, the opposition thereto and cross-motion for summary judgment of defendant, plaintiff's opposition to defendant's cross-motion, defendant's reply, oral argument on the motions, and the entire record herein.

Plaintiff filed the instant action, requesting that the Court vacate an arbitration award. Plaintiff alleged that the arbitrator exceeded his authority in refusing to af-firm the company's decision to discharge a union member for insubordination and threatening remarks. Complaint ¶¶ 23–25.

Defendant responded with a counter-claim, seeking enforcement of the award and past wages due to the discharged employee from the date of the arbitrator's decision. Answer and Counterclaim at 9.

Plaintiff thereafter moved for summary judgment. The company alleged that the arbitrator dispensed "his own brand of industrial justice" and that the basis of his award had no support in the record. Defendant filed a cross-motion for summary judgment, contending that the arbitrator properly interpreted the collective bargaining agreement and that the award drew its essence from the contract.

For the reasons stated below, the Court denies plaintiff's motion for summary judgment and grants the cross-motion of defendant Union.

### I.

On October 23, 1982, plaintiff Safeway suspended employee Odell Johnson from his position as a journeyman meat cutter for disobeying an order and threatening a supervisor with physical harm. Several days later, Johnson was terminated effective on the date of his suspension. Complaint ¶ 12; Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Plaintiff's Statement of Material Facts") ¶ 7; Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Defendant's Statement of Material Facts") ¶ 5.

The Union submitted a formal written grievance on October 25, 1982, to protest "the suspension and/or termination" of Johnson. Defendant's Statement of Material Facts ¶ 6; Complaint ¶ 13. As required under the parties' collective bargaining agreement then in effect, Safeway and the Union met on October 27, 1982, to discuss the grievance and attempt to reach an amicable settlement. Plaintiff's Statement of Material Facts ¶ 9; Exhibit B ¶ 21.2 to Complaint. Several days later, the parties

met a second time to discuss the disciplinary action taken against Johnson. Plaintiff's Statement of Material Facts ¶ 10; *see* Answer and Counterclaim at 6, ¶ 11.

Unable to resolve the grievance informally, the Union submitted the dispute to binding arbitration pursuant to the terms of the collective bargaining agreement. Defendant's Statement of Material Facts ¶ 7; Exhibit B ¶ 21.3 to Complaint. The arbitrator heard the matter on July 12, 1983 and August 10, 1983, and rendered his decision on November 3, 1983.

The arbitrator found that Johnson "was guilty of direct disobedience of an appropriate order, and that he compounded his offense by a threat to do bodily harm to a supervisor if he were disciplined for his insubordination conduct." Exhibit B at 7 to Complaint. The arbitrator refused to uphold the discharge, however, because of the company's failure to fully disclose all reasons for the decision "until after the judgment [to discharge Johnson] was reached." *Id.* at 6.

Specifically, the arbitrator found that at both grievance meetings, company officials told Johnson and Union representatives that the discharge was based on Johnson's insubordination and failure to follow instructions on October 23, 1982. After the second meeting, the company's personnel supervisor asked one Union representative to review Johnson's personnel file. Thereafter, during the arbitration hearing, the personnel supervisor, who was the company's final decision maker, stated that he relied on the acts of insubordination plus Johnson's past disciplinary record and a newspaper clipping of Johnson's conviction of battery in an incident involving a former girlfriend. *Id.* at 5.

Because reliance on the past record and newspaper clipping was not disclosed timely, the arbitrator overturned the discharge and ordered Johnson's reinstatement with-

out back pay, *id.* at 6–8, which amounted to a one-year suspension.

Safeway refused to follow the arbitration award and, instead, instituted this action.

## II.

The parties do not dispute the scope of judicial review of an arbitration award. The law is well settled that the courts' role is limited to determining whether the award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

This standard prohibits courts from reviewing the merits of an arbitration award. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Id.* at 596, 80 S.Ct. at 1360. Courts traditionally have refused to become another layer of review and cause of delay, *Office and Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority,* 724 F.2d 133, 137 (D.C.Cir. 1983), recognizing the utility of the arbitral process. "[A]rbitration of such disputes is faster, cheaper, less formal, more responsive to industrial needs, and more conducive to the preservation of ongoing employment relations than is litigation; ...." *Devine v. White,* 697 F.2d 421, 435 (D.C. Cir.1983).

▄▄▄ Rather, courts are limited strictly to determining whether the arbitrator "grossly deviate[d]" from the authority conferred on him by the collective bargaining agreement or from the issues submitted for arbitration.[1] *Office and Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority,* 724 F.2d at 140; *Unit-*

---

1. A court also may overturn an arbitration award if it evidences partiality by the arbitrator, is contrary to the record evidence, or is contrary to law or explicit public policy. *Office and*

*Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority,* 724 F.2d 133, 140 (D.C.Cir.1983).

ed Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 582, 80 S.Ct. 1347, ·1352, 4 L.Ed.2d 1409 (1960). An arbitrator's disregard of his conferred authority would produce an award that did not "draw its essence" from the labor agreement, and thus could not be upheld by a reviewing court. But under the law of the District of Columbia Circuit, "[t]he case must present egregious deviations from the norm before [the courts] will abandon the firmly-established principle of deference." *Office and Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority,* 724 F.2d at 137.

▮▮▮ The courts' deference to arbitration awards, however, does not grant to arbitrators unrestrained authority. As stated previously, arbitration is a matter of contract and the arbitrator's authority is limited by the arbitral agreement. *Davis v. Chevy Chase Financial Limited,* 667 F.2d 160, 165 (D.C.Cir.1981). "When an [arbitrator] ventures outside the scope of authority conferred on [him] by the collective bargaining agreement, [he] lacks power to bind the parties." *Northwest Airlines, Inc. v. Air Line Pilots Association International,* 530 F.2d 1048, 1050 (D.C. Cir.), *cert. denied,* 426 U.S. 942, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976). A court is precluded from giving effect to such an award. *Davis v. Chevy Chase Financial Limited,* 667 F.2d at 165.

An arbitrator's authority is confined to interpreting and applying the collective bargaining agreement. He may not substitute his view of what the parties to an agreement should have agreed to for what the parties actually did agree to. *Morgan Services, Inc. v. Local 323, Chicago and Central States Joint Board, Amalgamated Clothing and Textile Workers Union,* 724 F.2d 1217, 1224 (6th Cir.1984); *see Washington Hospital Center v. Service Employees International Union, Local 722,* 112 LRRM 3008 (D.D.C.1983). By exceeding his authority and in effect rewriting the collective bargaining agreement, the arbitrator improperly would be "dis-

pens[ing] his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. at 597, 80 S.Ct. at 1361.

Plaintiff in the instant action argues (1) that the arbitrator exceeded his scope of authority by modifying the collective bargaining agreement and (2) that even if the award was not an improper modification, the basis of the arbitrator's decision was supported by no evidence in the record. The Court finds both arguments to be without merit.

A. Scope of Authority

In overturning the company's discharge of employee Johnson, the arbitrator stated in part that he found

merit in the Union's objection that the Company in relying on the grievant's past record in reaching its final judgment to discharge him did not disclose that reliance to the Union until after the judgment was reached. Similarly the reliance on the newspaper clipping, which reliance was not disclosed to the Union or to grievant, was improper.

Exhibit A at 6 to Complaint.

Plaintiff interprets the arbitrator's decision as modifying the provisions of the collective bargaining agreement that dictate the proper procedures for plant management and protection of employee rights. Plaintiff contends that the decision requires "union-participation in pre-decision consideration of discipline," which ignores the contractually established right of management to discipline and the right of the Union thereafter to protest. Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Plaintiff's Motion") at 13.

Under the agreement, management has the exclusive responsibility for directing and controlling the work force, Exhibit B ¶ 1.1 to Complaint, and "the right to discharge or discipline any employee for good cause." *Id.* at ¶ 9.2. Once the disciplinary action is taken, the Union has the right to protest the action under the agreement's grievance procedures. *Id.* at art. 21.

Plaintiff argues that the collective bargaining agreement contains no provision "that requires the Company to notify the Union of the basis for disciplinary action prior to effecting the discipline." Plaintiff's Motion at 12. Rather, the grievance procedures are triggered only after a dispute or disagreement arises as to the interpretation of the agreement. The Union has no authority "to file a grievance concerning an anticipated disagreement or dispute" as to disciplinary action which has not yet been taken. *Id.* By demanding such a requirement, plaintiff argues, the arbitrator directly violated the collective bargaining agreement, which explicitly precludes the arbitrator from changing, modifying, or amending the agreement. *Id.* (citing Exhibit B ¶ 21.3(2) to Complaint).

■ An arbitrator, of course, may not ignore the plain and unambiguous language of a collective bargaining agreement. To do so would exceed the arbitrator's scope of authority and violate the "essence" requirement of the arbitration award. *Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 905 (5th Cir.1984); *Detroit Coil Company v. International Association of Machinists & Aerospace Workers, Lodge # 82*, 594 F.2d 575, 579 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979); *Washington Hospital Center v. Service Employees International Union, Local 722*, 112 LRRM at 3010.

■ But the right to interpret ambiguous language in the collective bargaining agreement is reserved exclusively for the arbitrator. A court may not overturn an arbitration award because its interpretation of the agreement differs from that of the arbitrator. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v. Enterprise Wheel & Car Corpora-*

*tion*, 363 U.S. at 599, 80 S.Ct. at 1362; *see also W.R. Grace & Company v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (An arbitration clause means that the parties choose to have disputes concerning construction of the agreement resolved by an arbitrator, not the courts.).

■ If an arbitration award interpreting ambiguous language represents a "plausible" interpretation of the contract, the award must be upheld. *Davis v. Chevy Chase Financial Limited*, 667 F.2d at 166 (citing *Federated Employers of Nevada, Inc. v. Teamsters Local No. 631*, 600 F.2d 1263, 1264 (9th Cir.1979)). " '[Courts] must resist the temptation to reason out a la judges the arbiter's award to see if it passes muster.' " *Alhambra Foundry Company v. General Warehousemen's Union, Local 598*, 687 F.2d 287, 289 (9th Cir.1982) (citation omitted). The arbitrator need only give a "permissible" construction, not necessarily the "best" one. *Morgan Services, Inc. v. Local 323, Chicago and Central States Joint Board, Amalgamated Clothing and Textile Workers Union*, 724 F.2d at 1222 n. 8; *see also Local Union 59, International Brotherhood of Electrical Workers v. Green Corporation*, 725 F.2d 264, 268 (5th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 124, 83 L.Ed.2d 66 (1984) (interpretation derived from wording or purpose of contract in some logical way).

While plaintiff argues that the arbitrator's wording represents a violation of express contract language, defendant asserts that the decision is a proper interpretation of the agreement's ambiguous "good cause" provision.

Article 9 of the collective bargaining agreement provides, in pertinent part, that the "Employer shall have the right to discharge or discipline any employee for good cause, including ... direct refusal to obey orders by the Employer which are not in violation of this Agreement...." Exhibit B ¶ 9.2 to Complaint.

Defendant contends that the arbitrator "was charged ... to decide whether 'good cause' for the termination existed." Memorandum of Points and Authorities in Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment at 5–6. The Union further argues that since the arbitrator's decision represents a plausible interpretation of the clause, the Court may not overrule the award. *Id.* at 6

According to defendant, the arbitrator's decision requires the company to provide procedural fairness to a disciplined employee by notifying the employee and Union of all reasons for the disciplinary action during the grievance process. Untimely notification would preclude the grievant and Union from responding to the company's charges, thereby circumventing the purpose of the contractually established grievance procedure. Memorandum of Points and Authorities in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment at 21–22.

The parties' differing interpretations evidence the ambiguous nature of the arbitrator's opinion in the instant case. The decision may be viewed as requiring Union participation in management's disciplinary decision-making process, which would violate the arbitrator's scope of authority. Or the opinion may be read as embodying an interpretation of the agreement's "good cause" provision. Both interpretations of the arbitrator's opinion are reasonable.

■ "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. at 598, 80 S.Ct. at 1361; *Office and Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority,* 724 F.2d at 141 ("[A]mbiguity in itself is not a basis to set aside the award.").

■ When an opinion is subject to several interpretations, the Supreme Court requires courts to favor the arbitrator's decision in order to encourage the writing of supporting opinions. *See United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. at 598, 80 S.Ct. at 1361; *International Association of Machinists & Aerospace Workers, Local Lodge No. 389 v. San Diego Marine Construction Corporation,* 620 F.2d 736, 739 (9th Cir.1980). An arbitrator is not required to state to the court his reasons for an award. A well-reasoned opinion, however, "engender[s] confidence in the integrity of the [arbitration] process and aids in clarifying the underlying agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. at 598, 80 S.Ct. at 1361.

■ Furthermore, as in *Enterprise,* this Court sees no reason to believe that the arbitrator in the instant action abused the authority placed in him by the parties and ignored the plain language of the agreement. *Id.* The Court, therefore, rejects the interpretation of plaintiff that the arbitrator exceeded his authority by improperly modifying the collective bargaining agreement. Rather, the Court finds that the arbitrator's decision reflects an interpretation of the agreement's ambiguous "good cause" standard.

This raises the issue of whether the arbitrator's interpretation is "plausible" or "permissible." The arbitrator has interpreted the "good cause" standard as requiring the company to meet not only the substantive requirements listed in the agreement, but also certain procedural requirements in disciplining or discharging an employee.

In his opinion, the arbitrator acknowledged that employee Johnson was guilty of insubordination and that he aggravated the offense by threatening a supervisor. Exhibit A at 7 to Complaint. The collective bargaining agreement provided that the company may "discharge or discipline any employee for good cause, including ... direct refusal to obey orders...." Exhibit B

¶ 9.2 to Complaint. The arbitrator found that although the offenses may have supported a discharge "in a proper case," he could not uphold the company's decision under the circumstances of the present case. Exhibit A at 7–8 to Complaint.

The circumstances included the failure of the company to notify timely the grievant and the Union of all the reasons for its decision to discharge the employee. The arbitrator found that at both grievance meetings, the company announced that the discharge was based on the employee's insubordination on October 23, 1982. The final decision maker, the company's personnel supervisor, however, apparently reviewed the employee's entire personnel file before the second meeting and based his approval of the discharge on that information. But he failed to notify the grievant and the Union of this reliance at the grievance meeting. *Id.* at 4–5; *see Safeway Stores, Inc. and UFCW Local 400*, FMCS 83K/10535 at 61, 80 (1983) (Strongin, Arb.) ("Arbitration Hearing"). Rather, the personnel supervisor reviewed employee Johnson's personnel file with one Union representative in the absence of the grievant at the conclusion of the second meeting. Exhibit A at 5 to Complaint.

Even though the personnel supervisor may have communicated his reliance to the Union representative at that time, Arbitration Hearing at 29, the arbitrator apparently thought the notification was untimely as it occurred after the conclusion of the second meeting, which terminated the informal grievance process. The grievant had no opportunity to respond to the additional reasons for his discharge and, in fact, he wrongly was told of a different basis for the action.

Under these circumstances, the arbitrator concluded that "good cause" did not exist for the discharge despite the seriousness of the employee's misconduct.

Several courts have addressed the question of whether procedural fairness properly may be interpreted from a similar "just cause" provision. The Eighth Circuit held that procedural ambiguity was inherent in a "just cause" clause which required resolution by the arbitrator. "[T]he arbitrator ... was required to decide what 'just cause' means. His holding that the term has significant procedural implications is not beyond the scope of his authority." *Chauffeurs, Teamsters and Helpers Local Union No. 878 v. Coca-Cola Bottling Company*, 613 F.2d 716, 721 (8th Cir.), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980); *Local 636, Upholsterers' International Union of North America v. American Carpet Mills, Inc.*, 86 LRRM 2611, 2612 (N.D.Ga.1973) ("A finding of just cause is certainly discretionary...."). The court therefore upheld the arbitrator's reinstatement of the employee based on his conclusion that the lack of procedural fairness precluded the finding of "just cause" for the discharge.

The court noted that arbitrators traditionally have applied notions of "industrial due process" to "just cause" standards. *Id.* at 719–20 (citing Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute*, 62 Va.L.Rev. 481, 500 (1976); Getman, *Labor Arbitration and Dispute Resolution*, 88 Yale L.J. 916, 921 (1979)). The court further stated that a collective bargaining agreement's express definition of the substantive aspects of the standard did not preclude the interpretation of procedural aspects. *Id.*

Similarly, the Sixth Circuit in *Anaconda Company v. District Lodge No. 27 of the International Association of Machinists and Aerospace Workers* held that a provision requiring the company to treat employees "fairly and justly" granted broad discretion to the arbitrator to interpret procedural requirements. 693 F.2d 35, 37 (6th Cir.1982).

This Court sees no reason to distinguish between the phrases "just cause" and "good cause." Both require a "legally sufficient ground or reason" for an action. *Black's Law Dictionary* 623, 775 (5th ed. 1979).

The collective bargaining agreement in the instant action is silent on procedural requirements for "good cause." The

agreement, however, establishes a process by which the Union may protest any company action which it believes violates the agreement. That process includes the opportunity for the parties to meet and attempt to resolve their differences informally before submitting the issue to arbitration. Exhibit B ¶¶ 21.2, 21.3 to Complaint. If the company fails to notify the grievant and Union fully of all its reasons for an action until after the conclusion of the informal grievance process, the company circumvents the process and denies the Union its contractually established right to re-solve the dispute informally.

The parties bargained for the arbitrator's interpretation of the "good cause" clause, which by its silence granted him discretion to determine procedural requirements. The arbitrator's interpretation that "good cause" did not exist to discharge employee Johnson because of a lack of procedural fairness is plausible. Even if the Court disagrees with this interpretation, the award must be upheld unless other grounds are shown for its reversal.

### B. Record Evidence

Plaintiff further argues that even if the arbitrator did not exceed his authority, the basis of his decision is unsupported by the record evidence. Specifically, plaintiff contends that the arbitrator refused to uphold the discharge solely because the company failed to notify the grievant and Union of its reliance on the employee's personnel file before the company's final decision to discharge was made. Plaintiff's Motion at 17.

Plaintiff claims that the uncontradicted evidence is to the contrary. The company's personnel supervisor testified that during his discussion with a Union representative of employee Johnson's file, he "advised her that based on [the October 23, 1982] incident plus the record of the employee, that [he] considered the disciplinary action to be appropriate." Arbitration Hearing at 29. Plaintiff claims that this discussion occurred *during* the second grievance meeting and *before* the personnel supervisor

ordered the discharge. Plaintiff's Motion at 18.

An arbitration award that is based on facts contrary to record evidence must fail. *Office and Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority,* 724 F.2d at 140; *Devine v. White,* 697 F.2d at 436 n. 80. If an arbitrator not only erred in view of the facts, but also the sole articulated basis for the award was in error, the award must be overturned as the result of a " 'gross mistake ... made out by evidence,' but for which, according to the arbitrator's rationale, a different result would have been reached." *Electronics Corporation of America v. International Union of Electrical, Radio and Machine Workers, Local 272,* 492 F.2d 1255, 1257 (1st Cir.1974) (quoting *Burchell v. Marsh,* 58 U.S. (17 How.) 344, 350, 15 L.Ed. 96 (1854) ).

But, again, the Court's review is limited. An arbitration award must stand if *some* support for its basis exists in the record. *Devine v. White,* 697 F.2d at 436 n. 80 (emphasis added). Courts have no authority to review the merits of an award. Thus, errors in the determination of factual issues alone do not warrant the overturning of an award. Only if no support whatsoever exists may a court vacate the award. *Storer Broadcasting Company v. American Federation of Television and Radio Artists, Cleveland Local,* 600 F.2d 45, 47–48 (6th Cir.1979); *Detroit Coil Company v. International Association of Machinists & Aerospace Workers, Lodge # 82,* 594 F.2d at 580–81.

The arbitrator in the instant action found that a review of employee Johnson's personnel file did not occur until . *after* the second grievance meeting and that at that meeting the reason for discharge was stated as insubordination. Exhibit A at 5 to Complaint. These findings were supported by testimony of James N. Green, a Union representative present at both grievance meetings. Arbitration Hearing at 422–23.

The arbitrator's statement that the company did not notify the Union of its reliance on the employee's past disciplinary record "until after the judgment [to discharge] was reached" creates an ambiguity. An uncertainty exists as to what the arbitrator meant by the quoted phrase. The parties argued extensively the precise timing of the company's final decision.

■ Defendant contends that the uncontradicted evidence shows that the final decision was reached only after the review of the employee's personnel file with a Union representative. Plaintiff's Motion at 18–21. Some evidence exists in the record, however, that the personnel supervisor approved the termination after receiving a call concerning the matter and reviewing the employee's personnel file before the second grievance meeting. Arbitration Hearing at 61, 80. At the meeting, however, the stated reason for the discharge was insubordination. *Id.* at 422. The arbitrator may have found that the personnel supervisor decided to terminate Johnson based on the file before the second meeting, yet stated different reasons for the termination at the meeting.

Alternatively, the arbitrator may have found that the final decision to discharge occurred at the close of the second grievance meeting when the grievant's and the Union's opportunity to respond to the charges ended. A subsequent review of the file with one Union representative after the close of the contractually established grievance process may not have constituted timely notice in the arbitrator's view, particularly when different reasons were given during the meeting.

Both of these interpretations are supported by at least some record evidence.

■ Where an arbitrator's language is ambiguous, and one interpretation is supported by record evidence while another is void of any supporting evidence, the Court may subscribe to the interpretation carrying support in the record. *Electronics Corporation of America v. International Union of Electrical, Radio and Machine Workers, Local 272*, 492 F.2d at 1257; *see United Steelworkers of America v. Enterprise Wheel & Car Corporation*, 363 U.S. at 597–98, 80 S.Ct. at 1361. This Court sees no reason to assume that the arbitrator in the instant action ignored the testimony of the personnel supervisor. The arbitrator, in fact, recognized that some review of the employee's past record occurred with a Union representative, Exhibit A at 5 to Complaint, although that review was untimely considering the statements made at the grievance meetings. *Id.* at 7.

■ Moreover, a court may not overturn an arbitration award unless the "sole articulated basis for the award was in error." *Electronics Corporation of America v. International Union of Electrical, Radio and Machine Workers, Local 272*, 492 F.2d at 1257. The award in the instant action is not clearly based solely on the lack of "industrial due process." The arbitrator stated that employee Johnson's insubordination and threat were "grave offenses which might *in a proper case* have led to an affirmance of the discharge penalty, and in any event call for a severe penalty." *Id.* at 7–8 (emphasis added). He did not state that had the company properly notified the grievant and Union of its reasons for discharge, he would have affirmed the penalty.

The collective bargaining agreement authorizes the company to "discharge or discipline" employees for good cause. Exhibit B ¶ 9.2 to Complaint. This language has been held ambiguous and subject to the arbitrator's interpretation. The arbitrator, therefore, would have the right to interpret the language as granting to the arbitrator the discretion to determine the appropriate discipline. *International Association of Machinists & Aerospace Workers, Local Lodge No. 389 v. San Diego Marine Construction Corporation*, 620 F.2d at 738–39; *see Morgan Services, Inc. v. Local 323, Chicago and Central States Joint Board, Amalgamated Clothing and Textile Workers Union*, 724 F.2d at 1222.

By vacating the arbitration award in the instant action, the Court would be intrud-

ing upon the authority of the arbitrator to interpret the collective bargaining agreement and to determine the appropriate penalty under the facts of this case even if the company had followed appropriate procedural requirements.

For the foregoing reasons, the Court denies the motion for summary judgment of plaintiff and grants the cross-motion of defendant.