**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 14, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

————————

No. 02-10467

————————

AMERICAN EAGLE AIRLINES, INC.,

Plaintiff — Counter-Defendant —
Appellee — Cross-Appellant,

v,

AIRLINE PILOTS ASSOCIATION,
INTERNATIONAL,

Defendant — Counter-Claimant —
Appellant — Cross-Appellee.

--------------------
Appeals from the United States District Court
for the Northern District of Texas, Fort Worth
--------------------

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Before this court is a labor-arbitration dispute between an airline company and a pilots'

association arising from an arbitration board's hearing and the subsequent appeal to the district court.

While judicial review of an arbitration board's determination is admittedly confined, this controversy

is one of the unwonted cases in which overturning an arbitrator's award is proper. As such, we affirm

the judgment of the district court, which vacated the arbitrator's award.

**I.**

The issues in this appeal concern a collective bargaining agreement ("CBA" or "Agreement") entered into in September 1997 by American Eagle Airlines, Inc. ("American Eagle"), and Air Line Pilots Association, International ("ALPA") to govern the working conditions of pilots employed at American Eagle. Included within the Agreement were provisions dictating the conditions for which a pilot may be terminated as well as the procedures to be followed by American Eagle to secure a termination. The CBA permits American Eagle to terminate pilots only for "just cause," a term the Agreement fails to define.

Section 20 of the CBA elucidates the grievance process by which an employee may challenge his termination. A pilot must request initiation of the grievance process within 14 days of receiving written notice of the charges against him, or the employment decision of American Eagle becomes final. If the process is timely invoked, "[a] first step hearing will be held at the pilot's domicile within 14 days of the date written request is received" by American Eagle. Within 14 days of the hearing, American Eagle must issue an opinion on the matter. If the decision is unsatisfactory to the pilot, he may appeal within 30 days by furnishing written notice to the System Board (the "Board"), which serves as a neutral arbitrator under the contract.

Section 20(G)(2) then notes:

If [American Eagle] fails to provide a written decision to the pilot... or hold a required hearing within the time limits specified, the pilot and the Association may consider the grievance denied.

Section 21 then details the duties and functions of the Board. Composed of three members, the Board has "jurisdiction over grievances filed pursuant to the terms of this Agreement." The CBA also protects the Board's right to "act in an independent manner" without consequences for its

2

relationship to American Eagle or ALPA.

On November 3, 1999, Captain Terry Balser, an American Eagle pilot, struck up a discussion with Boris Walckhoff, a cleaning and catering employee of American Eagle, on board the aircraft Balser piloted at the Los Angeles International Airport. Over the course of the conversation, Balser discussed the ongoing war in Chechnya, and questioned why Walckhoff, an immigrant of African, Russian, and German decent, was not fighting in it. Balser then displayed a medal with a reverse swastika on it and mentioned his displeasure that government money was being spent on African-Americans and Latinos. Walckhoff felt intimidated by this conversation and filed a complaint with American Eagle.

In response to Walckhoff's complaint, American Eagle conducted an investigation of Balser, which included holding two investigative meetings in November 1999. These meetings revealed that Balser regularly carried a dirk with a three and one-half-inch blade into secure areas of the airport, as well as on board the aircraft he flew. Captain Balser also admitted to having "nodded off" at times while on the clock.

On November 29, 1999, American Eagle issued a notice of termination to Balser, advising him that he was being discharged for harassing Walckhoff, failing to observe security regulations regarding weapons in secure areas, violating California penal law and Federal Aviation Administration regulations by bringing weapons on board an aircraft, and violating company policy against sleeping on board an aircraft. On December 9, 1999, 10 days after receiving the notice of termination, ALPA grievance chair Mark Taylor wrote to American Eagle informing it of Balser's intention to invoke the grievance procedures outlined in the CBA. Taylor again wrote American Eagle on February 4, 2000, noting that American Eagle had not scheduled a first-step

3

hearing. The letter referenced a conversation with Los Angeles Chief Pilot Janette McMurtrie on January 22, 2000, in which McMurtrie indicated her desire to forego the first-step hearing, and told Balser and ALPA to treat the grievance as denied by American Eagle. The matter was then submitted to the Board by ALPA.

After arguments were presented, the Board made several determinations. First, the Board found that American Eagle's failure to schedule the first-step hearing constituted a breach of the CBA, despite the language contained in Section 20(G)(2), which states that failure to schedule a hearing may be considered tantamount to a denied grievance. Second, the Board found that Balser seriously violated the CBA. Specifically, the Board noted that substantial evidence supported American Eagle's contention that Balser had harassed Walckhoff and that such conduct was abhorrent, finding that "the Employer had not only a right, but a duty to rid the workplace of such conduct." The Board also concluded that Balser had violated American Eagle's security rules and California law by bringing his dirk on board his aircraft and into secure areas of the airport. The Board found insufficient evidence to support a finding that Balser had slept while his plane was airborne. The Board, however, concluded that American Eagle had "not only a right, but a duty" to rid itself of Balser's behavior. Finally, the Board concluded that because both Balser and American Eagle had seriously violated the Agreement, both sides deserved a substantial penalty. Accordingly, the Board imposed a ten-week unpaid suspension on Balser and ordered his reinstatement with back pay due for the remaining period in which Balser was suspended.

American Eagle appealed the Board's decision to the United States District Court for the Northern District of Texas, pursuant to the Railway Labor Act, 45 U.S.C. §§ 151-88, arguing in

4

its motion for summary judgment that the Board's decision (i) failed to conform to the terms of the CBA, (ii) was beyond the jurisdiction of the Board, and (iii) violated public policy. The district court determined that implicit within the Board's opinion was a finding that Balser was fired for "just cause." Once such a determination was made, the district court reasoned, the Board lacked further authority to fashion an alternate remedy based on American Eagle's alleged procedural shortcoming of not holding the first-step hearing. Accordingly, the district court vacated the Board's arbitration award, holding that the Board should have upheld Balser's termination. The district court rejected ALPA's argument that the Board had not found just cause for Balser's termination because American Eagle did not meet the procedural requirements of the CBA, stating that ALPA introduced no authority for the proposition that such requirements could be considered in arriving at the just cause determination. The district court, however, did reject American Eagle's argument that the arbitration award violated public policy. Shortly thereafter, ALPA filed a timely notice of appeal and American Eagle cross-appealed on the public policy issue.

**II.**

We review *de novo* a district court's decision vacating an arbitration award as not grounded in the agreement of the parties. *E.I. DuPont de Nemours v. Local 900 of the Int'l Chemical Workers Union*, 968 F.2d 456, 458 (5th Cir. 1992). Summary judgment should be granted where the record indicates no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Rogers v. International Marine Terminals*, 87 F.3d 755, 758 (5th Cir. 1996). In considering summary judgment, we must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*,

5

475 U.S. 574, 587-88 (1986). Yet, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Judicial review of a labor-arbitration decision by this Court, or by the district court, is extremely limited. Where the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority the fact that a court is convinced he committed serious error does not suffice to overturn that decision." *Eastern Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57, 62 (2000) (internal quotations omitted). Thus, if there is ambiguity as to whether an arbitrator is acting within the scope of his authority, that ambiguity must be resolved in favor of the arbitrator, as the mere "inference" of *ultra vires* action is an insufficient "reason for refusing to enforce the award." *United Steelworkers of America v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 598 (1960).

We will not uphold an arbitrator's decision, however, when it dispenses its own "brand of industrial justice" outside the scope of an arbitration agreement. *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Rather, we are free to scrutinize an arbitrator's award "to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989) (citing *Container Prods., Inc. v. United Steelworkers of Am.*, 873 F.2d 818, 820 (5th Cir. 1989)). And, "[w]here an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy." *Delta Queen*, 889 F.2d at 602 (citing *Container Prods.*, 873 F.2d at 820). *See also Houston Lighting & Power Co. v. International Broth. of Elec. Workers, Local*

6

*Union No. 66*, 71 F.3d 179, 184 (5th Cir. 1995) (If the language of the applicable collective bargaining agreement is "clear and unequivocal, an arbitrator is not free to change its meaning."). In short, an "arbitrator may not ignore the plain language of the contract." *Misco*, 484 U.S. at 38.

**III.**

The two predominant questions presented in this appeal are (i) whether the district court properly determined that the Board found that Balser's conduct constituted "just cause" for his termination and (ii) whether the arbitrator exceeded its jurisdiction by improperly interpreting the terms of the CBA, specifically whether the Board erred in determining that American Eagle's failure to provide Balser with a first-step hearing constituted a serious violation of the Agreement and warranted voiding Balser's termination. As the Board determined that any violation of American Eagle's rules and policies committed by Balser was mitigated by American Eagle's failure to grant him a first-step hearing, the two issues are inextricably linked and it is therefore appropriate to discuss them together.

*A.*

We begin our analysis by addressing whether American Eagle's failure to provide a first-step hearing constituted a violation of the CBA. In doing so, we consider the relevant language of the Agreement. Section 20(C) of the CBA provides that "[a] first step hearing will be held at the pilot's domicile within fourteen (14) days of the date written request is received" by American Eagle. It is undisputed that this so-called first-step hearing never took place. Section 20(G)(2) provides further that if American Eagle fails to hold a required hearing, including, *inter alia*, a first-step hearing, the pilot "may consider the grievance denied." Section 21 of the CBA then provides for establishing the Board "for the purpose of adjusting disputes or grievances arising

7

under" the Agreement. The Board determined that by failing to schedule the first-step hearing, American Eagle breached the CBA. American Eagle disagrees with this assessment, arguing that although it did not provide the first-step hearing, it did not breach the CBA because ALPA chose to treat the failure to hold the first-step hearing as a denied grievance when it submitted the matter to arbitration.

Although we are not unmindful of the high degree of deference the federal courts generally afford arbitrators, *see, e.g., Eastern Associated Coal*, 531 U.S. at 62, an arbitrator may not ignore the plain language of a collective bargaining agreement. *Misco*, 484 U.S. at 38. And, the clear language of the CBA precludes determining that American Eagle's failure to schedule a first-step hearing is a procedural default *if* ALPA chooses to treat such failure as a denied grievance and proceed to arbitration. Put differently, although the Agreement specifically provides for a first-step hearing when a pilot files a grievance, Section 20(G)(2) establishes that the failure to conduct such a hearing should be treated no differently than a first-step hearing at which the pilot's plea for relief is unsuccessful, provided that the pilot chooses to treat the lack of the hearing as a denied grievance and proceed to arbitration.

Here, ALPA and Balser did choose to treat American Eagle's failure to provide a first-step hearing as a denied grievance and elected to proceed to arbitration.[1] When American Eagle failed to provide the first-step hearing, ALPA did not insist that such a hearing be held. Rather, ALPA elected to arbitrate, thereby treating the lack of the hearing as a denied grievance. Furthermore, while ALPA argued before the arbitrator that the lack of the first-step hearing

---

[1] This decision is consistent with previous disputes between American Eagle and ALPA, where there were no first-step hearings and ALPA and its associated pilots, without protest, simply proceeded to arbitration.

denied Balser due process, it was never asserted that the appropriate remedy for such an alleged violation would be to compel American Eagle to conduct the hearing. ALPA grieved the termination, not the post-termination first-step hearing, the absence of which ALPA treated as a denial allowing it to proceed to arbitration. By invoking arbitration, ALPA implicitly considered the grievance denied and waived any other alternative it may have had concerning American Eagle's failure timely to conduct a first-step hearing. This comports with the district court's interpretation of the CBA; specifically, that if a first-step hearing does not occur and ALPA invokes arbitration, it has considered the grievance denied within the meaning of Section 20(G)(2) and has waived any claim it might have had based on American Eagle's putative procedural default. Accordingly, American Eagle has committed no default of the CBA.

*B.*

Having determined that American Eagle's failure to schedule a first-step hearing did not constitute a procedural default of the CBA—or, even if it could have, that such a default was cured by waiver when ALPA proceeded to invoke arbitration—it is now necessary to determine whether there was just cause to terminate Balser. While the Board never used the phrase "just cause," it did hold that Balser's conduct was egregious and, therefore, must be removed from the workplace.[2] Citing *DuPont*, the district court held that the Board implicitly found just cause for Balser's termination. 968 F.2d at 458 (holding that just cause for termination may determined implicitly by an arbitrator). Once just cause existed, the district court reasoned, there was no jurisdiction for the Board to permit any outcome other than Balser's termination, even if a

---

[2] Of course, the Board determined that American Eagle's alleged procedural default, which we have now concluded was not a default, prevented Balser's termination.

procedural default occurred. In support of this conclusion, the district court noted that the CBA required only just cause for dismissal, rather than just cause *plus* scheduling a first-step hearing.

Not surprisingly, the parties maintain disparate views regarding the determination of the district court. American Eagle agrees with the district court's assessment that the Board implicitly found just cause and then exceeded its jurisdiction by improperly considering the lack of the first-step hearing so as to save Balser's job. On the other hand, ALPA denies that the Board ever found just cause for Balser's termination. Furthermore, ALPA asserts that the failure to schedule the first-step hearing was a component used to determine whether just cause for termination existed at all. If a supposed procedural default—here, the lack of the first-step hearing—necessarily precludes a finding of just cause, ALPA argues, there is no ground for Balser's termination. Thus, while American Eagle argues that the Board did find just cause but did not uphold Balser's termination because of the supposed procedural default, ALPA believes that the Board never found just cause, in part because of the lack of the initial hearing. We now address these competing theories, analyzing them in light of our determination that American Eagle's failure to schedule the first-step hearing did not constitute a procedural default of the CBA.

At issue, then, is whether the Board could properly consider any supposed procedural violation by American Eagle in its "just cause" analysis and, alternatively, whether an alleged procedural failing could prevent termination of an employee who had already been discharged for just cause. First, as noted, *supra*, American Eagle committed no procedural violation of the CBA. This reason alone is sufficient to conclude that the Board erred if it considered such conduct either in its just cause calculus or to mitigate a finding of just cause.

10

Second, and alternatively, even if the failure to hold the first-step hearing were a procedural default, it would be improper to consider this failure in the just cause analysis or to prevent the termination of an employee who had already been discharged for just cause. Indeed, the procedural violation alleged by ALPA—*i.e.*, failure to conduct a first-step hearing—occurred *after* Balser committed the acts cited by American Eagle and the district court as constituting grounds for termination, and *after* Balser was terminated on those grounds. Thus, this putative procedural default could not have been properly considered in determining whether Balser's actions constituted just cause for his termination. ALPA, however, attempts to argue that there is authority for the proposition that contractual procedural requirements can be considered by arbitrators in determining whether cause for dismissal exists. While no circuit authority specifically permits a procedural default to affect the just cause calculus, ALPA cites to *Chauffeurs, Teamsters and Helpers Local Union 878 v. Coca Cola Bottling Co.*, 613 F.2d 716 (8th Cir. 1980), in which the Eighth Circuit held that an arbitrator could consider a company's failure to abide by a bargaining agreement's procedural requirements in determining whether cause existed for dismissal. In *Chauffeurs*, the employer's alleged procedural default was that the employee "was not afforded an opportunity to tell his side of the story prior to termination." 613 F.2d at 717. Importantly, *Chauffeurs* and similar cases[3] concern only a company's pre-termination procedural failings within the just cause determination. At issue here, however, is American Eagle's post-discharge behavior, which is a different matter entirely, as this circuit and

_____

[3] Other courts outside this circuit have approved the rule in *Chauffeurs*. *See, e.g., Anaconda Co. v. District Lodge No. 27 of the Int'l Assn. of Machinists and Aerospace Workers*, 693 F.2d 35, 37 (6th Cir. 1982); *Safeway Stores v. United Food and Commercial Workers Union*, 621 F. Supp. 1233, 1237-38 (D.D.C. 1985).

11

the Supreme Court have recognized. *See Misco*, 484 U.S. at 40 n.8; *Gulf Coast*, 991 F.2d at 247. In *Misco*, the Supreme Court held that "[l]abor arbitrators have stated that the correctness of a discharge must stand or fall upon the reason given at the time of discharge." 484 U.S. at 40 n.8. Furthermore, in *Gulf Coast*, an employee was terminated for violating his employer's substance abuse policy, but the arbitrator reinstated the employee with rehabilitation conditions based on his finding that the employee's post-termination conduct indicated he was a prime rehabilitative candidate. 991 F.2d at 247. We vacated the arbitration award, ruling that the arbitrator acted outside the authority of the relevant collective bargaining agreement when it considered the employee's post-termination conduct. *Id.* at 255 ("[A]n arbitrator [is] to look only at the evidence before the employer at the time of the discharge."). Accordingly, it was inappropriate if the Board considered American Eagle's post-termination conduct in determining whether Balser was terminated for cause. Thus, American Eagle's alleged procedural default cannot be used in the just cause analysis.

Furthermore, a procedural default may not be used to offset a finding of just cause for termination. Assuming Balser's actions constituted just cause for his termination, the Board had no jurisdiction not to terminate him, regardless of any alleged default committed by American Eagle, given that Section 20(A)(2) of the CBA notes that *only* just cause is necessary for termination. As the Agreement does not require just cause plus the absence of any alleged procedural deficiencies by American Eagle to support termination, the Board cannot impose this requirement, as the district court properly recognized. Thus, the Board erred when it considered the failure to hold the first-step hearing in its just cause analysis or as a mitigating factor after determining that there was just cause for Balser's discharge, because the failure to hold the first-

12

step hearing (i) did not breach the CBA and, in any event, (ii) can neither preclude nor mitigate just cause.

*C.*

Given that the Board could not have considered any alleged post-termination procedural violation by American Eagle in its determination of just cause and that such a determination turns solely on the pilot's conduct, we turn now to the Board's opinion to determine whether the district court properly held that the Board issued an implied finding of just cause. In this circuit, we have long recognized that where an arbitrator implicitly finds that just cause exists, it need not recite the operative phrase "just cause." *See DuPont*, 968 F.2d at 458-59 (citing *Delta Queen*, 889 F.2d at 602). Indeed, the phrase "just cause" "carries no talismanic significance in labor jurisprudence." *Delta Queen*, 889 F.2d at 602. Rather, "[i]t is simply a term of art that defines the many unrelated, independent acts that serve as grounds for employee discipline under" a collective bargaining agreement." *Id.* In *Delta Queen*, for instance, we held that an explicit finding by the arbitrator of "gross carelessness" satisfied the collective bargaining agreement's requirement that individuals may be disciplined only upon a showing of "proper cause." *Id.* at 604. Thus, we have long held that implicit findings of just cause for termination warrant the same significance and carry the same force as explicit findings.[4]

The district court did not err in determining that Balser's actions constituted just cause for his termination. Indeed, the Board determined that Balser's "violation" of American Eagle's "anti-harassment policy" provided American Eagle with "not only a right, but a duty to rid the workplace" of Balser's conduct. The Board also addressed the seriousness of Balser's bringing

---

[4] *See DuPont*, 968 F.2d at 458-59; *Delta Queen*, 889 F.2d at 602.

13

his dirk onboard the aircraft he flew, noting that doing so clearly violated American Eagle rules. Thus, the district court was correct to conclude that there was an implicit finding of just cause because the Board's opinion concludes that Balser's conduct clearly justified his firing. As the CBA authorizes discharge only for just cause, the Board, by necessary implication, determined that just cause existed for Balser's termination.[5]

ALPA argues that the well-settled rule of *DuPont* and *Delta Queen*—*i.e.*, that an arbitrator's finding of "just cause" may be implicit—is limited to the facts of those cases and should not be applied here. This argument fails for at least two reasons. First, there is simply nothing in the language of *DuPont* or *Delta Queen* to suggest that these holdings were unique to their respective facts. On the contrary, our citing *Delta Queen* in the *DuPont* opinion indicates our intention that just cause may be found implicitly. *See DuPont*, 968 F.2d at 458-49.

Second, any reliance on our holding in *Weber Aircraft Inc. v. General Warehousemen and Helpers Union Local 767*, 253 F.3d 821 (5th Cir. 2001), for the proposition that *DuPont* and *Delta Queen* are inapplicable to this case is misguided. In *Weber*, we considered whether an arbitrator's finding that a worker committed a violation of a certain offense category (there, "Category 1") that contemplated a variety of penalties—including termination—compelled the conclusion that there was just cause for termination. 253 F.3d at 824. The *Weber* holding noted only that it was improper to infer a finding of just cause for termination based only upon the

---

[5] In this case, the reasoning by implication is as follows: (1) to constitute grounds for termination under the CBA, the act or acts in question must constitute just cause, *i.e.*, an employee can be terminated for any act or acts that constitute just cause; (2) the Board found that Balser seriously violated his obligations and that American Eagle had a duty to rid the workplace of Balser's conduct; (3) thus, the Board must have found that American Eagle had just cause to terminate Balser.

14

arbitrator's determination that the employee in question had committed a violation of Category 1, because Category 1 contemplated penalties short of discharge. *Id.* at 825. Because workers who ran afoul Category 1 could be punished in a variety of ways, a violation of Category 1 was not tantamount to termination. *Id.* Thus, our holding in *Weber* did nothing to undercut the rule of *DuPont* and *Delta Queen* that a finding of just cause may be implicit. In fact, it was noted that neither case was applicable to the precise issues presented in *Weber*. *Id.* The district court, therefore, did not err in holding that there had been an implicit finding of just cause, which is tantamount to an explicit finding of the same, in the Board's arbitration opinion.

## D.

Having determined that the district court correctly held that the Board implicitly found just cause for Balser's termination, the next question is whether the district court was correct to set aside the arbitration award, given that the Board was without jurisdiction to fashion a remedy beyond what was contemplated in the CBA, namely that an employee can be terminated only for just cause. The district court's analysis is correct: if the relevant bargaining agreement requires just cause for dismissal, an arbitrator acts beyond its jurisdiction by fashioning an alternate remedy once it has concluded—implicitly or otherwise—that an employee's conduct constitutes just cause for dismissal, as the Board did here. *DuPont*, 968 F.2d at 459; *Delta Queen*, 889 F.2d at 604. Accordingly, the Board was without jurisdiction to craft a remedy based upon American Eagle's supposed post-termination violation of the CBA. Furthermore, and alternatively, even if it were proper to allow an employer's violation of a collective bargaining agreement in these circumstances to offset a for-cause termination, it could not be done here as the employer,

15

American Eagle, did not violate the CBA.[6]

## IV.

Accordingly, we the affirm the district court's grant of summary judgment vacating the arbitration award.

<span style="color:red">ENDRECORD</span>

---

[6] As the foregoing analysis is sufficient to affirm the judgment of the district court, it is unnecessary for us to address the remaining issue on appeal, *i.e.*, whether the district court erred in determining that the Board's decision to reinstate Balser did not violate public policy.

DENNIS, Circuit Judge, dissenting:


Our review of arbitration awards is under a highly deferential standard that requires us to enforce arbitration judgments that even "arguably construe or apply" a contract, even when we believe that construction reflects "serious error." Eastern Associated Coal Corp. v. United Mine Workers of America, 531 U.S. 57, 62 (2000). Because I believe the majority does not adhere to this standard, I respectfully dissent.

The majority begins its analysis by taking aim at the arbitrator's finding that American Eagle violated the plain terms of the collective bargaining agreement by failing to timely schedule a first-step hearing. Section 20(C) of the agreement says such a hearing "*will be held* at the pilot's domicile within fourteen days" (emphasis added) of receipt of a timely request for a hearing. The arbitrator reasoned that because the Airline Pilots Association (ALPA) and Balser made a timely hearing request, the airline's failure to schedule the hearing constituted a breach of Section 20(C).

The majority contends that the arbitrator erred in finding a contract violation because ALPA and Balser waived their right to a first-step hearing when they "elected to proceed to arbitration"

-17-

under Section 20(G)(2).[7] The arbitrator expressly rejected this contract interpretation in reaching its decision. The arbitrator explained that Section 20(G)(2) addressed the union's procedural quandary of where to go when the employer failed to provide the required hearing, and did not address what the remedy would be for the airline's failure to provide the required hearing. Using that procedure merely "facilitate[d] [ALPA's] attempt to get to the next hearing level," and did not waive any remedies for the airline's violation of the contract.

If the arbitrator was "even arguably construing or applying the contract and acting within the scope of [its] authority," in reaching this result, "the fact that a court is convinced he committed serious error does not suffice to overturn that decision." Eastern Associated Coal 531 U.S. at 62. Here, there is no question that the arbitrator was "arguably construing or applying the contract" in finding that American Eagle violated the collective bargaining agreement. Section 20(C) expresses the first-step hearing requirement in mandatory terms, and American Eagle did not abide by that section. While the scope of the remedy provided by Section 20(G) is susceptible to alternative interpretations, the majority is incorrect in finding that the arbitrator's view of that section as procedural is not even an

_____

[7]Section 20(G)(2) states: "If the Company fails to...hold a required hearing within the time limits specified, the pilot and the Association may consider the grievance denied."

"arguable" construction.  And because the arbitrator was arguably applying the contract, the majority should not have disturbed that interpretation on review.  "[A] court should not reject an award on the ground that the arbitrator misread the contract."  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987).

Thus, the central question here is whether the arbitrator exceeded his authority in considering American Eagle's breach of the collective bargaining agreement in determining whether the airline could terminate Balser.  "Collective bargaining agreements often say little or nothing about the arbitrator's remedial powers; yet it cannot be that he has none...[rather] the agreement must implicitly grant him remedial powers where there is no explicit grant."  Miller Brewing v. Brewery Workers Local 9, 739 F.2d 1159, 1163 (7th Cir. 1984).  In the context of evaluating terminations of employees, arbitrators have used this broad remedial power to reduce or reverse the discipline meted out to employees where an employer has not abided by the labor agreement's prescribed grievance process.  See 9 TIM BORNSTEIN ET AL.,LABOR AND EMPLOYMENT LAW § 11.09 (2003) (explaining the wide discretion arbitrators have in altering employee discipline based on employer violations of grievance procedures).

For example, in Teamsters Local Union No. 284 v. Maremont Corp., 515 F.Supp. 168 (S.D. Ohio 1980), employees of Maremont engaged in an illegal wildcat strike that ordinarily may have been

grounds for terminating the employees. However, the company did not abide by the collective bargaining agreement's requirement that it give written reasons for termination and conduct a hearing within 72 hours of termination. Id. at 170. The arbitrator concluded that the employees had been denied "contractual due process," and thus ordered the employees reinstated with backpay. Id. The district court upheld the arbitrator's award explaining that the arbitrator had interpreted the contract's procedural requirements as a mandatory obligation to which there had been no waiver. Id. at 173. Because this was a contract interpretation the court concluded it lacked the power to disturb it even though it would likely not have made the same interpretation itself. Id.

Courts have allowed arbitrators to go even further and read procedural guarantees into just cause even where they are not found in the contract. In Chauffeurs, Teamsters and Helpers Local Union 878 v. Coca Cola Bottling Co., 613 F.2d 716 (8th Cir. 1980), it was undisputed that the employee to be terminated engaged in dishonest behavior that would be sufficient grounds to fire that employee under the labor agreement. The arbitrator reinstated the employee, however, because Coca Cola failed to provide all the reasons for firing the employee prior to his grievance hearing, thus depriving the employee of an adequate opportunity to rebut the charges. Id. at 717. The Eighth Circuit upheld the arbitrator's decision, finding that the arbitrator had interpreted the just cause

provision as including procedural rights for the employee and that because this was an "arguable" contract interpretation the court lacked the power to disturb it. Id. at 721. Other courts to have considered the issue have followed the Eighth Circuit and allowed arbitrators to include procedural requirements as components of just cause, even when those requirements are not spelled out in the contract. Anaconda Co. v. District Lodge No. 27 of the Int'l Assn. of Machinists and Aerospace Workers, 693 F.2d 35, 37 (6th Cir. 1982); Safeway Stores v. United Food and Commercial Workers Union, 621 F.Supp. 1233 (D. D.C. 1985).

Our case is akin to Maremont and even easier than Chauffeurs. The arbitrator made the contract interpretation that the grievance procedures spelled out in the contract were mandatory, and that because American Eagle did not abide by those requirements it did not have just cause to terminate Balser. This was an "arguable" contract interpretation, and therefore one that we are not empowered to upset here. Eastern Associated Coal 531 U.S. at 62. See also ELKOURI & ELKOURI: HOW ARBITRATION WORKS 919 (Marlin M. Volz & Edward P. Goggin eds., 2nd ed. 1991) ("Arbitrators will, in many cases, refuse to uphold management's action where it failed to fulfill some procedural requirement specified by the agreement.")

The majority attempts to avoid this straightforward analysis by asserting that the arbitrator lacked the authority to consider American Eagle's post-termination procedural violations in deciding

-21-

whether the airline had just cause to fire Balser.  If any such limitation exists on the arbitrator's authority, it must be found in the collective bargaining agreement.[8]  Misco, 484 U.S. at 39-40.  The majority argues that Section 20(A)(2) is that limitation because it "does not require just cause plus the absence of any alleged procedural deficiencies by American Eagle to support termination."

Section 20(A)(2) states, "[a] pilot who has completed his probationary period will not be discharged or disciplined without just cause."  While this section does not require more than just cause to terminate an employee, it does not define what that term means.  Based on the mandatory language of Section 20(C), the arbitrator has concluded that the contract intended just cause to include the requirement that the employer hew to the prescribed grievance procedures.  This was an "arguable" contract interpretation not in conflict with the contract's plain language, and therefore not subject to judicial reversal.  Eastern Associated Coal 531 U.S. at 62.  Consequently, the majority's substitution of

---

[8]In Misco the Court reversed the Fifth Circuit's decision refusing to enforce an arbitrator's award because the arbitrator had failed to consider all the evidence available to him in making his decision.  The Court explained that barring fraud or gross misconduct the only limitation on an arbitrator's evidentiary determinations dwell in the contract.  Misco, 484 U.S. at 39.  The only such limitation in Misco was a ban on hearsay evidence, which the arbitrator did not transgress.  Id.  Because fraud or gross misconduct did not motivate the arbitrator, the reviewing court was powerless to impose additional evidentiary requirements on the arbitrator.  Id. at 40.

its own interpretation of Section 20(A)(2) of the contract was legally erroneous.

The majority also suggests that there may be a federal common law prohibition on an arbitrator's consideration of an employer's post-termination behavior in determining just cause. Assertion of such a prohibition is contrary to Misco, which explained that "procedural questions which grow out of the dispute and bear on its [just cause determination] are to be left to the arbitrator," except where fraud or gross misconduct are alleged. Misco, 484 U.S. at 40.

Moreover, the case cited by the majority for this federal common law limitation on arbitrator discretion in fact reiterates the foundational rule that the limits on an arbitrator's discretion are only found in the collective bargaining agreement itself. In Gulf Coast Industrial Workers Union v. Exxon Co., 991 F.2d 244 (5th Cir. 1993), the labor agreement in question stated that Exxon "shall have the right to discipline and discharge employees for just cause." Id. at 247. The contract further specified that drug use constituted just cause, and rendered an employee "liable to discharge on the first offense." Id. This contract language imposed the relevant restriction on the arbitrator: once an arbitrator found that drug use had occurred, termination had to be upheld. Thus, we refused to enforce the arbitrator's award where he reinstated an employee who had been found using drugs because

-23-

the contract limited the arbitrator's discretion once just cause was found. Id. at 256. See also Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Association, 889 F.2d 599, 604 (5th Cir. 1989) (finding that because contract defined "proper cause" for termination as including "carelessness," once that finding was made no further inquiry was appropriate). Here there is no such contractual definition of just cause limiting the arbitrator's discretion. Absent such a restriction, the arbitrator was free to consider the contractual due process as a component of just cause. Chauffeurs, 613 F.2d at 721; Maremont Corp., 515 F.Supp. at 173. Cf. Weber Aircraft v. General Warehousemen & Helpers Local Union, 253 F.3d 821, 824-25 (5th Cir. 2001) (explaining that where contract did not strictly define just cause, nor limit the arbitrator's discretion in deciding penalties, arbitrator was free to fashion a lesser remedy than discharge for less aggravated infractions).

Finally, the majority holds that the arbitrator implicitly found just cause here, and therefore that it exceeded its authority in then considering American Eagle's contract violations in reducing Balser's punishment. In reaching this conclusion the majority misinterprets the import of our decisions in Delta Queen and E.I. DuPont de Nemours v. Local 900 of the Int'l Chemical Workers Union ("Dupont"), 968 F.2d 456 (5th Cir. 1992) , and fails to follow United Steelworkers of America v. Enterprise Wheel & Car

<u>Co.</u>, 363 U.S. 593 (1960).

In <u>Delta Queen</u> we explained that the phrase just cause "carries no talismanic significance in labor jurisprudence." <u>Delta Queen</u>, 889 F.2d at 604. "If a collective bargaining agreement defines 'proper cause' to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequence of his finding that a listed offense was committed." <u>Id.</u> Thus, in <u>Delta Queen</u> because "proper cause" was defined to include carelessness, and the arbitrator found carelessness, he implicitly found "proper cause" even if he never used those words. <u>Id.</u> We then applied this rule to similar circumstances in <u>DuPont</u>, holding that where the arbitrator found the use of drugs on company premises was "a discharge offense," and then found that conduct occurred, a just cause finding was implicit. <u>DuPont</u>, 968 F.2d at 458-59.

In contrast to <u>Delta Queen</u>, here there is no contractual list of offenses that constitute just cause, the finding of which terminated the arbitrator's discretion. And unlike <u>DuPont</u> the arbitrator here never stated that the offenses that he found Balser guilty of were offenses that themselves constituted just cause. The majority argues that the arbitrator's statement that "[t]he Employer has not only the right, but a duty to rid the workplace of such conduct," (referring to harassment) was such a statement. But the arbitrator's statement that the airline had the right to rid the workplace of harassment is not the same as finding just cause

-25-

to terminate Balser. Many steps short of termination would severely punish Balser for engaging in unacceptable conduct and deter the conduct from recurring, thereby "ridding" the workplace of that behavior. Likewise, while the arbitrator did find that Balser had violated company rules by arming himself with a dirk on board an aircraft, it never suggested that this rule violation was itself a ground for discharge. Contrary to the majority's suggestion, then, there is nothing in the arbitrator's opinion which mandates the inference that the arbitrator found just cause.

Absent such a necessary logical implication, as in Delta Queen and DuPont, we lack the authority to imply just cause, where, as here, it results in a finding that the arbitrator exceeded his untrammeled authority to interpret and determine just cause. If there is ambiguity as to whether an arbitrator is acting within the scope of his authority, that ambiguity must be resolved in favor of the arbitrator, as a mere "inference" of ultra vires action is insufficient "reason for refusing to enforce the award." United Steelworkers, 363 U.S. at 598.

Thus, I believe that the arbitrator was acting within the scope of his contractual authority by interpreting the contract to authorize it to consider the airline's violation of Section 20(C)'s first-step hearing in determining just cause. I would, therefore, reverse the judgment of the district court and enforce the arbitration award.