399 F.3d 524
 187 CONCOURSE ASSOCIATES and Stonecrest Management, Inc., Plaintiffs-Counterdefendants-Appellees,
v.
Michael FISHMAN, as President of Service Employees International Union, Local 32BJ, AFL-CIO, Defendant-Counterclaimant-Appellant.
Docket No. 04-0284-CV.
 United States Court of Appeals, Second Circuit.
 Argued: September 15, 2004.
 Decided: February 28, 2005.
 
 Scott M. Wich, Clifton Budd & DeMaria, LLP, New York, NY, for Plaintiffs-Counterdefendants-Appellees.
 Andrew L. Strom, Office of the General Counsel, Service Employees International Union, Local 32BJ, AFL-CIO, New York, NY, for Defendant-Counterclaimant-Appellant.
 Before: SACK, RAGGI, and HALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 187 Concourse Associates and Stonecrest Management, Inc. (collectively "Concourse") own and manage property in the New York City area. Alberto Mejia was employed by Concourse as a porter from 1995 until he was discharged on January 15, 2002. Concourse and the Service Employees International Union, Local 32BJ, AFL-CIO ("the Union"), of which Mejia is a member, were parties to a March 1998 collective bargaining agreement ("the CBA"). Article IX[1] of the CBA provides that "[n]o employee who has completed the trial period shall be discharged ... without good and just cause." Article XXII provides for "final and binding" arbitration of disputes arising under the CBA. Article XXII also states that "the arbitrator shall have no authority to add to, subtract from, or modify the provisions of this Agreement and shall confine his decision to a determination based on the facts presented."
 
 
 2
 Two incidents led to Mejia's termination from employment. First, on December 20, 2001, a supervisor questioned Mejia about an absence from work. In response, Mejia screamed, "Hit me! Hit Me!" and stuck his head in the supervisor's chest. Second, at a January 15, 2002 meeting to discuss the first incident, Mejia became violent, cursed, screamed, and accused his employers of discrimination. Concourse subsequently discharged Mejia.
 
 
 3
 The Union argued Mejia was terminated without just cause, and the case was submitted to arbitration in accordance with the CBA. The parties asked the arbitrator to decide two questions: "Was the Grievant discharged for just cause? If not, what shall the remedy be?"
 
 
 4
 In his opinion, the arbitrator credited the version of the facts presented by Concourse and its witnesses. He stated that "[t]he behavior of the Grievant is incomprehensible in light of the facts as testified. It is completely unacceptable in the workplace and the Employer had no option but to terminate the Grievant." Having made that explicit finding, however, the arbitrator went on to conclude that:
 
 
 5
 [I]n light of the Grievant's past good work record, I believe he should be given an opportunity to prove he can be a productive employee. Therefore I will return him to his prior or a similar position with a final warning and on a six-month probationary basis. The time from his discharge until he is returned to work is to be considered a disciplinary suspension.
 
 
 6
 Concourse challenged the arbitrator's award in Supreme Court, New York County; the Union removed the action to the United States District Court for the Southern District of New York pursuant to the Labor Management Relations Act, 29 U.S.C.A. §§ 152(5) and 185(a) (West 1998), and 28 U.S.C.A. §§ 1441 and 1446 (West 1994 & Supp.2004). Both parties moved for summary judgment.
 
 
 7
 The district court granted Concourse's motion, vacated the arbitration award, and denied the Union's cross-motion for summary judgment. In reaching its determination, the district court held that "the arbitrator's finding that [Concourse] `had no option but to terminate Mejia' cannot be read as having any meaning other than a finding of just cause for termination." The district court further held that, having found just cause for the termination, the arbitrator had no authority to fashion an alternative remedy. This appeal followed.
 
 
 8
 On appeal of a district court's decision to uphold or vacate an arbitration award, this Court reviews findings of fact for clear error and questions of law de novo. Wackenhut Corp. v. Amalgamated Local 515, 126 F.3d 29, 31 (2d Cir.1997). We accord a high degree of deference to an arbitrator's decision. Id."[A]n arbitration award must be upheld when the arbitrator `offer[s] even a barely colorable justification for the outcome reached.'" Id. at 31-32 (second alteration in original) (quoting Andros Compania Maritima, S.A., Marc Rich & Co., 579 F.2d 691, 704 (2d Cir.1978)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); accord Local 1199, Drug, Hosp. and Health Care Employees Union v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir.1992). If, however, the arbitrator exceeds his powers, the court may vacate the award. 9 U.S.C.A. § 10(a)(4) (West 1999 & Supp.2004).
 
 
 9
 "The principal question for the reviewing court is whether the arbitrator's award draws its essence from the collective bargaining agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice." Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 44 (2d Cir.1997) (internal quotation marks and alteration omitted); accord United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In addition, "[t]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." Brooks Drug Co., 956 F.2d at 25 (internal quotation marks omitted).
 
 
 10
 Here, the arbitrator's authority was limited by both the CBA and the questions submitted by the parties for arbitration. Article IX of the CBA prohibits Concourse from discharging an employee without just cause but does not restrict Concourse's right to discharge an employee if just cause exists. The parties' submission to the arbitrator consisted of only two questions: "Was the Grievant discharged for just cause? If not, what shall the remedy be?" By the terms of the submission, therefore, the arbitrator had authority to proceed to the second question only if he found no just cause for Mejia's termination.
 
 
 11
 On this appeal the Union argues that the arbitrator did not make a finding of just cause when he stated that Concourse "had no option but to terminate" Mejia. According to the Union, by referring to Mejia's previously unblemished work record, the arbitrator applied an element of the just cause test and implicitly found no just cause for the termination. The Union asserts that this conclusion is buttressed by the very fact that the arbitrator reinstated Mejia to his job.
 
 
 12
 We disagree. Like the district court, we interpret the arbitrator's statement that Concourse "had no option but to terminate" Mejia to be a finding of just cause for Mejia's discharge. Upon a finding of just cause, there was nothing further to be done. The arbitrator had no authority, under either the CBA or the submission, to fashion an alternative remedy. By ordering Mejia reinstated, the arbitrator exceeded his authority.
 
 
 13
 For these reasons, the district court's vacatur of the arbitration award is affirmed.
 
 
 
 Notes:
 
 
 [1]
 What appears to be Article IX is designated as "Article VIX" in the CBA. For convenience, we will refer to the article as Article IX