# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1436

_____

| | | |
|---|---|---|
| Breckenridge O'Fallon, Inc., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Teamsters Union Local No. 682, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: September 22, 2011
Filed: January 9, 2012

_____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Breckenridge O'Fallon, Inc. ("Breckenridge"), produces ready-mix concrete. Breckenridge employee Ron Eguia injured his back driving a ready-mix truck. After treatment, Eguia's physician released him to work with no lifting restrictions. Acting on opinions by two other physicians that Eguia should be subject to permanent lifting restrictions below the minimum physical requirements of the job, Breckenridge refused to schedule him for further work as a ready-mix truck driver. Teamsters Union Local No. 682 (the "Union") filed a grievance on Eguia's behalf under its collective bargaining agreement with Breckenridge (the "CBA"), and the parties proceeded to arbitration after failing to resolve the dispute. The arbitrator ordered

Breckenridge to provide Eguia a second Functional Capacity Evaluation ("FCE") under the company's return-to-work policy (the "Policy") and to assign Eguia work as a ready-mix truck driver and restore his seniority if he passes the FCE. Breckenridge commenced this action to vacate the award. The district court[1] granted summary judgment for the Union and enforced the award. Breckenridge appeals, arguing the arbitrator's award did not draw its essence from the CBA. We affirm.

## I.

**A. The Dispute.** A workers' compensation physician released Eguia to work without restrictions in late November 2007, after an extended absence. Breckenridge required Eguia to complete an FCE before returning to his truck driver position. Designed and administered by an independent physical rehabilitation clinic, the three-day FCE mimics the physical demands on a ready-mix truck driver, ensuring that employees returning to work are able to safely perform the essential functions of the job. When Eguia failed the FCE in December 2007, Breckenridge sent him to Dr. Daniel Kitchens, a neurosurgeon, who reported in late December that Eguia had reached "Maximum Medical Improvement" and had a permanent lifting restriction of forty pounds, less than the minimum sixty pounds prescribed in Breckenridge's written job requirements for a ready-mix truck driver. Breckenridge placed Eguia on unpaid medical leave.

In February 2008, Eguia submitted a Report to Employer from his personal physician recommending that he was able to work without restriction. Asked by Breckenridge to provide a "re-certification," Dr. Kitchens advised, "my opinion has not changed." Faced with conflicting medical opinions, Breckenridge instructed Eguia to obtain an opinion from a third physician. Eguia chose Dr. Frank Petkovich

---

[1]The Honorable Catherine D. Perry, Chief Judge of the United States District Court for the Eastern District of Missouri.

from a list of doctors provided by Breckenridge. Dr. Petkovich conducted an independent medical examination and opined that Eguia's back had reached Maximum Medical Improvement and he should not lift more than forty-five pounds. The Union filed a grievance after Breckenridge told Eguia, "you are unable to perform the job and we will be unable to schedule you for further work as a ready-mix truck driver."

    **B. The CBA.** As relevant here, the CBA provided:

    Article VII, Seniority, Section 6: ". . . . In cases of sickness . . . an employee shall be continued [on the seniority list] for a period not to exceed twenty-four (24) months."

    Article VIII, Grievance Procedure: "Should differences arise between the company and the union or any employee of the company as to the meaning or application of the provisions of this agreement, such differences shall be settled in the following manner:

*   *   *   *   *

    Section 4. If the grievance has not been settled as a result of the foregoing, it may be submitted to arbitration."

    Article IX, Discharge: "Employees may be discharged for just cause."

    Article XVIII, Management Rights: "All functions of management pertaining to the efficient and orderly operation of the plant, the management of the work, and the direction of all working forces and of the affairs of the company, are vested exclusively in the company. The rights of management include, but are not limited to: the right . . . to establish rules for employee safety, discipline and conduct; to promulgate work rules . . . ."

    **C. The Contentions.** The Union presented evidence that two employees had previously failed a FCE, received a full medical release after further treatment, were

then allowed by Breckenridge to take a second FCE, and were returned to duty when they passed. The Union argued that Breckenridge's refusal to allow Eguia to take a second FCE after his personal physician released him to work without restriction was an unreasonable, inconsistent implementation of Breckenridge's reasonable FCE Policy. The Union posited that the resulting refusal to schedule Eguia for work as a truck driver violated three provisions of the CBA: the "just cause" limitation on Breckenridge's right to discharge, Eguia's seniority rights, and the provision granting management the right to adopt reasonable work and safety rules.

Breckenridge presented evidence that the two employees who were allowed to take a second FCE were not similarly situated to Eguia in a critical respect -- no physician subjected them to a permanent, job-disabling lifting restriction after they were first released to work without restriction. Because the FCE simulates the lifting requirements of the truck driver job, Breckenridge noted, it would be an unreasonable safety risk to allow an employee who is subject to such a permanent restriction to take a second FCE. Therefore, it had not acted inconsistently in directing Eguia to obtain a third, tie-breaking medical opinion at its expense, a procedure expressly authorized by regulations implementing the Family and Medical Leave Act ("FMLA"). See 29 C.F.R. § 825.307(c). Stressing that the FCE Policy unambiguously reserved it the right "in its sole discretion" to require an employee to undergo a FCE before returning to work, Breckenridge argued that it had not violated its right under the CBA's "management rights" provision to establish reasonable work and safety rules.

**D. The Decision.** Consistent with the parties' submission, the arbitrator first stated the issue to be resolved: did Breckenridge violate the CBA by not sending Eguia for an FCE "after he submitted a medical opinion that he was able to work without restrictions?" The arbitrator rejected the Union's contention that Eguia had been discharged but agreed that he retains his seniority rights if he is able to meet the job's requirements. The arbitrator noted that Breckenridge "had the right to establish reasonable rules by virtue of its management rights clause [and] did so when it

-4-

established rules related to the FCE." However, the arbitrator reasoned, Breckenridge "is obligated to be consistent in the manner it administers the FCE" and may not "unilaterally discard those rules in favor of a process specified by the FMLA." Acknowledging the issue was complex because of the conflicting physician opinions, the arbitrator concluded that Breckenridge violated the CBA when it did not allow Eguia to take a second FCE because "all previous individuals in similar situations were afforded the opportunity." The district court granted summary judgment confirming the arbitrator's award, concluding that, given the "great deference accorded arbitration awards," Breckenridge "failed to show that the arbitrator exceeded his powers and issued a decision that failed to draw its essence from the parties' CBA."

## II.

Judicial review of a labor-arbitration award is narrow and deferential. An arbitrator's award must be upheld if it "draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987), quoting Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960). "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (quotation omitted).

On appeal, Breckenridge first argues that the award failed to draw its essence from the CBA because the arbitrator ignored the plain language of the CBA and imposed obligations not contained in the CBA. The "draws its essence" issue in this case is unusual because the grievance as resolved by the arbitrator involved only the CBA's management rights provision. More typically, the grievance at issue concerns whether the employer had just cause to discharge an employee -- a determination

plainly within the scope of the arbitrator's authority -- and the employer argues that the arbitrator erred in rejecting the employer's defense based upon a management rights provision. See, e.g., Misco, 484 U.S. at 39; Trailmobile Trailer, LLC v. Int'l Union of Elec. Workers, 223 F.3d 744, 747 (8th Cir. 2000); Alvey, Inc. v. Teamsters Local Union No. 688, 132 F.3d 1209, 1212-13 (8th Cir. 1997).

When a management rights provision is expressly limited to the right to establish *reasonable* work rules, determining whether the employer acted reasonably in adopting and applying its work rules is within the scope of the arbitrator's authority to decide a particular grievance the parties have submitted to him. See Chicago Tribune Co. v. NLRB, 974 F.2d 933, 935, 938 (7th Cir. 1992). But here, Article XVIII of the CBA contained an unlimited declaration of management rights, raising the question -- largely unexplored in reported judicial decisions -- may the arbitrator nonetheless review whether Breckenridge's exercise of those rights was "reasonable." See Shulman, Reason, Contract, and Law in Labor Relations, 68 Harv. L. Rev. 999, 1009-10 (1955). But we need not take up that question because Breckenridge, in submitting this grievance to the arbitrator, expressly conceded, as it was contractually free to do, that Article XVIII only granted it the right to establish reasonable safety and work rules.[2]

With the management rights clause limited by the parties to the adoption and implementation of reasonable work rules, this appeal may be readily resolved under our narrow standard of review of labor arbitration awards. We agree with

---

[2]We note that Breckenridge's submission (or concession) was not unusual. "[I]n practice, arbitrators may tend to modify the residual rights theory by imposing a standard of reasonableness as an implied term of the agreement." Elkouri & Elkouri, How Arbitration Works 640 & n.28 (Alan Miles Ruben 6th ed. 2003). Under this practice, work rules promulgated unilaterally by the employer are subject to the grievance procedure, and challenges are directed, not to their adoption, but "rather to the content or particular application of some specific rule." Id. at 768.

Breckenridge that the FCE Policy, a set of safety and work rules promulgated under Article XVIII, did not *require* that Breckenridge allow Eguia to take a second FCE. The Policy simply did not address this situation. Rather, in the interests of employee and workplace safety, it reserved to Breckenridge "the right to require the FCE at any time in its sole discretion." But the arbitrator did not rule that Breckenridge had violated the Policy. He ruled that Breckenridge violated Article XVIII when it unreasonably and inconsistently refused to apply the Policy when Eguia initially failed the FCE but then, after further treatment, was released to work by his personal physician without restriction. Breckenridge forcefully argues that the arbitrator wrongly determined that Eguia was similarly situated to two other employees who were allowed or directed to take a second FCE. But that is an attack on the merits of the award that is beyond our limited judicial review. See Garvey, 532 U.S. at 511. The arbitrator's decision drew its essence from the CBA's management rights provision as construed by the parties. Accordingly, the district court properly rejected Breckenridge's petition to vacate that award.[3]

Breckenridge further argues that the award was contrary to federal law as set forth in an FMLA regulation and therefore the arbitrator "failed to acknowledge" the CBA's savings clause, which provides that all other provisions of the CBA remain in effect if one provision is invalidated. This contention is without merit. The regulation provides that, when faced with two conflicting medical opinions, an employer *may* require an employee to obtain a third medical opinion. 29 C.F.R. § 825.307(c). The regulation is permissive, not mandatory, and the statute generally provides that it shall not "be construed to diminish the obligation of an employer to comply with any collective bargaining agreement." 29 U.S.C. § 2652(a). Thus, the

---

[3]We upheld an arbitrator who ruled that the company had acted inconsistently with its past practice under the CBA in The Star Tribune Co. v. Minn. Newspaper Guild, 450 F.3d 345, 349 (8th Cir. 2006).

savings clause was irrelevant to this dispute and required no "acknowledgment" by the arbitrator.

The judgment of the district court is affirmed.

_____