# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1186

_____

Northern States Power Company, Minnesota, doing business as Xcel Energy

*Plaintiff - Appellee*

v.

International Brotherhood of Electrical Workers, Local 160

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 16, 2012
Filed: April 1, 2013

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Northern States Power Company ("NSP") sought in the district court[1] to vacate an arbitration award, arguing that the arbitrator exceeded his authority under a Collective Bargaining Agreement ("CBA") with the International Brotherhood of

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Electrical Workers, Local 160 ("Union") to grant an award after first determining that NSP had just cause for making its termination decision. The district court agreed with NSP and vacated the award. The Union appeals the district court's order. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Curtis Snow worked for NSP as a "Journeyman Lineman." In July 2010, NSP conducted a routine background check on Snow and learned that on May 4, 2010, he had pled guilty to three felony counts of possession of a pornographic work involving a minor. Snow was sentenced to a term of probation. He did not inform NSP of his conviction or the terms of his probation. One of the terms of his probation was that Snow could have "no contact with a minor until approved." As a Journeyman Lineman, Snow responded to electrical power outages and made needed repairs. Snow's job responsibilities could result in him working alone, but testimony presented at the arbitration hearing established that it was unusual for any lineman to work alone and there was no evidence that Snow had ever worked alone during his two years of employment with NSP.

Upon learning of the probation and its terms, NSP determined that it could not guarantee that Snow would have no contact with a minor while performing his job duties. Thus, NSP terminated Snow on August 6, 2010.

The Union submitted a formal grievance under the CBA regarding Snow's termination. After the parties were unable to resolve the matter using the CBA's internal grievance procedure, the matter was submitted to the arbitrator. The parties stipulated that the arbitrator was to decide these issues: "Was the Grievant, Curtis Snow, terminated for just cause? If not, what shall the appropriate remedy be?"

After conducting a hearing, the arbitrator ruled as follows:

> [T]he Local's grievance is denied in part and sustained in part. To the extent that Mr. Snow was convicted of a serious crime that raises some very legitimate concerns on the part of the Management going forward, they have demonstrated justification for their decision. At the same time however, the Union has presented convincing evidence which sets forth a number of factors that existed which ultimately favor the imposition of a penalty less than the Grievant's dismissal.

The arbitrator then ordered that NSP return Snow to work, without back pay, at Snow's former position or a position with near or equal pay and benefits.

NSP initiated this action in district court seeking to vacate the arbitrator's award on the basis that the arbitrator, after finding just cause for Snow's termination, exceeded his authority under the CBA when he ordered NSP to reinstate Snow. The district court granted NSP's motion to vacate the arbitrator's award of reinstatement.

II.

We review de novo the district court's legal determination that the arbitrator exceeded his authority in making an award under the CBA. See Int'l Bhd. of Elec. Workers, Local 1 v. GKN Aerospace N. Am., Inc., 431 F.3d 624, 627 (8th Cir. 2005) ("Where, as here, an arbitration provision of a contract is at issue, we also review de novo the court's interpretation of the contract and the arbitration clause."). Judicial review of the arbitrator's ultimate decision is very deferential and should not be disturbed "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

The CBA at issue in this case provides that "[i]n the matter of suspension, demotion, or discharge, if after hearing witnesses, the charges are not sustained . . . the arbitration board may rule that the employee shall or shall not receive full or partial wages from the Company." Based on this provision, the parties stipulated that the question before the arbitrator took the form of two parts, the second only necessary if the first was answered in the negative. First, "[w]as the Grievant, Curtis Snow, terminated for just cause?" Only if the arbitrator determined that NSP did not terminate Snow for just cause was he to decide "what shall the appropriate remedy be?"

The question presented in this case is a narrow one: Did the arbitrator determine that NSP had "just cause" for terminating Snow? The Union argues that it is clear the arbitrator determined there was not just cause for Snow's termination because the arbitrator, invoking "well-established arbitral jurisprudence," determined that NSP should reinstate Snow. In other words, the Union maintains, the fact that the arbitrator granted an award means that he determined the NSP did not have "just cause" for terminating Snow. NSP argues that in making the award, the arbitrator was exceeding his authority under the CBA after he determined NSP had "just cause" for terminating Snow, and that it is irrelevant that the arbitrator failed to use the words "just cause" in discussing NSP's termination of Snow.

We are guided in our analysis by other circuits that have addressed virtually this same question. The Second Circuit affirmed the district court's order vacating an arbitrator's award where the arbitrator found that the employer "had no option but to terminate the Grievant," but despite that finding entered an award returning the grievant to work with directions that the time between termination and the return to work be considered a disciplinary suspension. See 187 Concourse Assoc. v. Fishman, 399 F.3d 524, 526 (2d Cir. 2005) (per curiam). The arbitrator had been presented with the almost identical two-part question as the arbitrator here: "Was the Grievant discharged for just cause? If not, what shall the remedy be?" Id. The union argued

-4-

the arbitrator's finding that the employer "had no option but to terminate" did not equate to a finding of "just cause" for the termination because the arbitrator referred to the grievant's prior unblemished record and awarded reinstatement to the grievant. Id. at 526-27. In affirming the district court's decision to vacate the award, the Second Circuit explained, "[W]e interpret the arbitrator's statement that [the employer] 'had no option but to terminate' [the grievant] to be a finding of just cause for [the grievant's] discharge. Upon a finding of just cause, there was nothing further to be done." Id. at 527.

Furthermore, the Fifth Circuit has explained that "where an arbitrator implicitly finds that just cause exists, it need not recite the operative phrase 'just cause.'" See Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l, 343 F.3d 401, 409 (5th Cir. 2003). Similar to the Second Circuit, the Fifth Circuit also affirmed a district court's order vacating the arbitrator's award, concluding that "if the relevant [CBA] requires just cause for dismissal, an arbitrator acts beyond its jurisdiction by fashioning an alternate remedy once it has concluded—implicitly or otherwise—that an employee's conduct constitutes just cause for dismissal." Id. at 410.

Additionally, our prior decision in St. Louis Theatrical Co. v. St. Louis Theatrical Brotherhood Local 6, supports the conclusion of the district court in this case. 715 F.2d 405 (8th Cir. 1983). There we held that, after the arbitrator determined the employee participated in a work stoppage as defined by the CBA, the arbitrator exceeded his authority by concluding that discharge was an excessive penalty for the misconduct. See id. at 408.

Here, the language of the arbitrator's decision—specifically that NSP had "demonstrated justification" for its decision to terminate Snow—is sufficient to show that the arbitrator found the termination was supported by "just cause." Having answered the first submitted question in the affirmative, the arbitrator had no authority to address the second question or to fashion a remedy different than the

-5-

termination. Therefore, the district court properly vacated the arbitrator's award for reaching beyond his authority under the CBA.

## III.

Accordingly, we affirm.

MURPHY, Circuit Judge, dissenting.

A careful reading of the arbitrator's award reveals that he clearly made no finding of just cause. Since the arbitrator's order to reinstate Curtis Snow's position at NSP drew its essence from the collective bargaining agreement, I respectfully dissent.

After NSP and the union disagreed about the appropriate discipline for Snow, they put to the arbitrator the question of whether Snow was terminated for "just cause," and if not, what the remedy should be. The phrase "just cause" is a "term of art that defines the many unrelated, independent acts that serve as grounds for employee discipline under a collective bargaining agreement." Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l, 343 F.3d 401, 409 (5th Cir. 2003) (citation omitted).

After conducting a hearing, the arbitrator found in the final section of his written decision, entitled "Award," that

> [t]o the extent that Mr. Snow was convicted of a serious crime that raises some very legitimate concerns on the part of Management going forward, they have demonstrated justification for their decision. At the same time however, the Union has presented convincing evidence which sets forth a number of factors that existed which ultimately favor the imposition of a penalty less than [Snow's] dismissal.

-6-

The majority reads these two sentences as if they were separate decisions when in fact both are part of the arbitrator's decision on the pivotal issue of just cause. See Trailmobile Trailer, LLC v. Int'l Union of Elec., Salaried, Mach. & Furniture Workers, AFL-CIO, 223 F.3d 744, 747 (8th Cir. 2000).

The majority concludes that the arbitrator's reference to "demonstrated justification" carries more weight than he clearly intended it to serve in his arbitration decision. It has failed to read the two sentences of the award together as the arbitrator intended as shown by the limiting wording in his first sentence. The award states that management has put forward a demonstrated justification for its decision "[t]o the extent that Mr. Snow was convicted of a serious crime." (emphasis supplied). This is not the same as a finding of "just cause" which is a key term of art in arbitration and labor management relations. See Griffith v. Fed. Labor Relations Auth., 842 F.2d 487, 498 (D.C. Cir. 1988).

A natural reading of the two sentences in the arbitrator's ultimate decision here is that while NSP had reasons for its decision to fire Snow, "[a]t the same time" however the union had presented convincing evidence that less than just cause existed for dismissing him. The parties voluntarily bargained for an arbitrator to decide issues on which they become deadlocked, see Franklin Elec. Co. v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am., 886 F.2d 188, 192 (8th Cir. 1989), and the clarity of a lawyer's brief is not anticipated or required in the bargain, see Breckenridge O'Fallon, Inc. v. Teamsters Union Local No. 682, 664 F.3d 1230, 1234 (8th Cir. 2012).

We refuse to enforce an arbitration award only where it does not draw its essence from the collective bargaining agreement, and "in determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts resolved in favor of the arbitrator's award." Walsh v. Union Pac. R.R. Co., 803 F.2d 412, 414 (8th Cir. 1986). A "mere ambiguity in the opinion accompanying

an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960).

Any "mere ambiguity" created by this arbitrator's reference in one sentence of his award to NSP's "demonstrated justification" is insufficient to conclude that he exceeded his authority in ordering Snow reinstated. United Steelworkers, 363 U.S. at 598. Reading the two sentences together as the arbitrator obviously intended and resolving all doubts in favor of the award, the arbitrator was "arguably construing or applying" the collective bargaining agreement and we must enforce his award. E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (citation omitted).

NSP and the union had bargained for an arbitrator to decide whether Snow's termination was for just cause, and we cannot substitute our views in place of those logically drawn from a close reading of the arbitrator's award. See Breckenridge O'Fallon, 664 F.3d at 1234. NSP supplied its justification for Snow's termination, which the arbitrator considered before determining that no just cause existed for its decision based on what he called "a number of factors" and "convincing evidence." See Int'l Bhd. of Elec. Workers, Local Union No. 53, AFL-CIO v. Sho-Me Power Corp., 715 F.2d 1322, 1326 (8th Cir. 1983).

The majority cites some inapposite cases in reaching its decision. See 187 Concourse Associates v. Fishman, 399 F.3d 524, 526 (2d. Cir. 2005) (per curiam) and American Eagle Airlines, 343 F.3d at 409. The arbitrator in Fishman had concluded that an employer "had no option but to terminate" the employee. 399 F.3d at 526. In American Eagle, the arbitrator found that the employer had "not only a right, but a duty to rid the workplace" of the employee's conduct. 343 F.3d at 409. The language in those arbitral awards is different from the explanation provided by the arbitrator in the case before the court.

Here, the arbitrator discussed NSP's attempt at "justification," but then proceeded to point out the "convincing evidence" of "a number of factors" that led to his conclusion that no just cause existed. The arbitrator explained that the evidence included "a rush to judgment [by NSP] in the course of its investigation without taking the time to consider all relevant evidence" and "clear evidence" of disparate treatment. Not only did the arbitrator never use the bargained for term "just cause," but such a finding for Snow's termination cannot be inferred from the plain language of the award. The arbitrator demonstrated his reasoning supporting his ultimate decision that NSP did not have just cause for firing Snow and there was "convincing evidence" that all the evidence favored the imposition of a "penalty less than [Snow's] dismissal."

Reading the two sentences of the award together as clearly intended by the arbitrator's words "[a]t the same time however," the decision cannot fairly be read to favor NSP. Since the arbitrator found that no just cause existed for Snow's termination, he had authority to order him reinstated at NSP. The parties bargained for the arbitrator to decide their dispute, and the resulting award drew its essence from the collective bargaining agreement. United Steelworkers, 363 U.S. at 598. The district court's decision should therefore be reversed, and the arbitration award should be enforced.

_____