United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-30333
_____

BEAIRD INDUSTRIES, INC.,

Plaintiff - Counter Defendant - Appellee,

versus

LOCAL 2297, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,

Defendant - Counter Claimant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

Before JOLLY and DAVIS, Circuit Judges, and ENGELHARDT, District
Judge.[1]

E. GRADY JOLLY, Circuit Judge:

Beaird Industries, Inc. ("Beaird") and the Local 2297 of the
International Union, United Automobile, Aerospace and Agricultural
Implement Workers of America ("Union") are parties to a valid
collective bargaining agreement ("CBA"), which contains a binding
arbitration provision and in which Beaird reserves the right to
subcontract work. The Union grieved Beaird's subcontracting
decision in relation to certain landscaping work, and the
Arbitrator found in favor of the Union, ordering Beaird to return

_____

[1] District Judge of the Eastern District of Louisiana, sitting
by designation.

the work to the bargaining unit. Beaird sought vacatur of the arbitration award in the United States District Court for the Western District of Louisiana. The district court granted summary judgment in favor of Beaird, vacating the award. We hold that the Arbitrator exceeded his authority by finding in favor of the Union and thus AFFIRM the district court's vacatur of the arbitral award.

I

The facts of this case are not complex. Beaird operates a manufacturing plant in Shreveport, Louisiana. Beaird and the Union are parties to a valid CBA that includes a final and binding arbitration procedure for settling grievances. It is undisputed that the CBA covers the grievance at issue here.

A new ownership team took over Beaird in December 2001 and conducted an analysis of non-revenue producing activities, including Beaird's buildings and grounds department. Following the review in January 2002, Beaird sought bids from landscaping contractors to perform landscaping work outside of the fence line of the facility. On January 11, Beaird met with the Union to discuss its intent to subcontract that landscaping work, and on January 17, Beaird accepted the low bid and reassigned three bargaining unit employees to do building and grounds work inside the fence line.

The Union grieved Beaird's decision to subcontract and appealed the grievance to arbitration in accordance with the CBA. Following a hearing, the Arbitrator issued his decision on November

2

26.  The Arbitrator sustained the Union's grievance and ordered Beaird to restore the outside of the fence line landscaping work to the bargaining unit.

In his decision, the Arbitrator recognized that the reservation of the right to subcontract in the CBA is "without any specific limitation" and "without any specific words of enhancement."  He then noted that the right to subcontract is "not exercised or found in a vacuum.  It is done in the context of a complex, and in this case a 'complete' and 'entire' Collective Bargaining Agreement, and as such it is not a completely unqualified right."  He reasoned that although "[t]he Company had a legitimate concern and interest in reducing costs," "it had a responsibility not to act in this direction at the sacrifice of interests protected by the CBA."  In the end, the Arbitrator was "not convinced that the cost savings realized from the subcontracting out-weighed the adverse impacts on the CBA and the Unit structure, particularly in view of other options the Company had under the CBA to reduce the outside-the-fence landscaping costs and minimize the stress on the CBA protections."

On January 6, 2003, Beaird filed a complaint in federal district court seeking vacatur of the arbitration award.  The district court ruled on cross-motions for summary judgment on March 11, 2004.  The district court denied the Union's motion for summary judgment and granted Beaird's motion for summary judgment, vacating the arbitration award.  The district court held that the Arbitrator

exceeded his authority by construing the subcontracting clause to limit Beaird's right to subcontract bargaining unit work. The district court reasoned that "[t]he clear and precise language of the CBA reveals that the arbitrator was not acting within the scope of his authority by ignoring the unequivocal reservation of the right to subcontract. Despite the restricted standard of review that this court must employ of the arbitrator's decision, this court cannot overlook the flagrant violation by the arbitrator of his authority by expanding the precise language of the CBA."

The Union now appeals the district court's grant of summary judgment to Beaird.

## II

### A

We review a district court's grant of summary judgment in a suit to vacate an arbitration award de novo. Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767, 253 F.3d 821, 824 (5th Cir. 2001). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

Where, as here, an arbitration decision arises from the terms of a CBA, judicial review is narrowly limited. Courts should afford great deference to arbitral awards. See Int'l Chem. Workers Union v. Columbian Chems. Co., 331 F.3d 491, 494 (5th Cir. 2003). Accordingly, a court must affirm an arbitral award "as long as the

4

arbitrator is even arguably construing or applying the contract and acting within the scope of his authority . . . ." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). If the arbitrator has not exceeded his authority, a court may not vacate the resulting award just because the court is convinced that he "committed serious error." Id. Courts likewise should not overrule the arbitrator's decision simply because they might interpret the contract differently. Int'l Chem. Workers Union, 331 F.3d at 495. "As long as the arbitrator's decision 'draws its essence from the collective bargaining agreement' and the arbitrator is not fashioning 'his own brand of industrial justice,' the award cannot be set aside." Weber Aircraft, 253 F.3d at 824 (citing Misco, 484 U.S. at 38).

B

(1)

We begin our analysis with the language of the CBA at issue. Importantly, it provides that "[t]he specific terms of this Agreement shall be the sole source of any rights that may be asserted by the Union against the Company." The subcontracting rights in contention are defined as follows:

> Except as otherwise specifically provided in this agreement, the Company has and retains and the Union recognizes the sole and exclusive right of the Company to exercise all the rights or functions of management which the Company may exercise within its sole and exclusive discretion without any prior

5

negotiations. The term "rights of management" includes the following:

\*\*\*
B. . . . the decision to subcontract out work presently performed in any area of the facility to an independent contractor or another company. (However, work force augmentation by outside contractor employees on the scope of work assigned to bargaining unit employees inside Beaird's facility will not be undertaken prior to the Union and Company discussing the matter.)

The arbitrator's powers are limited by the CBA: the arbitrator "shall have no power to add to, subtract from, or modify any terms and conditions of this Agreement," and he "shall have no authority to substitute his discretion on cases where the Company is given authority to decide those issues by this Agreement."

In considering the Union's grievance, the Arbitrator framed the pertinent issue as whether Beaird violated the CBA by subcontracting the landscaping work. The Arbitrator opined that Beaird would have a residual right to subcontract even if this right was not explicitly listed in the CBA and that the language of the CBA did not limit Beaird's right to subcontract. As we noted above, he also found that Beaird had "a legitimate concern and interest in reducing costs," but that Beaird "had a responsibility not to act in this direction at the sacrifice of interests protected by the CBA." The Arbitrator was "not convinced that the cost savings realized from the subcontracting outweigh[ed] the adverse impact on the CBA." Consequently, he decided that Beaird

6

had violated the CBA by subcontracting the landscaping work and sustained the Union's grievance.

(2)

Beaird argues that the Arbitrator exceeded his authority by ignoring the plain language of the CBA, by deciding the appeal based on his own opinions and judgment, and by ignoring Beaird's reservation of the right to subcontract. Beaird contends that the Arbitrator's decision should be vacated because it does not "draw its essence" from the CBA. The district court agreed.

The Union counters that the Arbitrator did not exceed his authority. The Union argues that the Arbitrator properly construed the subcontracting clause in the context of the entire CBA and that he properly relied upon his judgment and experience to determine that the ambiguous subcontracting clause did not give Beaird the unfettered right to subcontract. The Union notes that the Arbitrator acknowledged the language of the CBA and quoted it in his decision. The Union draws support from this Circuit's decision in Folger, which upheld an arbitrator's award in favor of the union, requiring an employer to assign yard maintenance work to union employees despite a provision in the CBA giving the employer the right to subcontract. Folger Coffee Co. v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of America-UAS, Local Union No. 1805, 905 F.2d 108 (5th Cir. 1990).

Although at first blush Folger appears strongly to support the Union's position, a closer examination reveals that the CBA at

7

issue here is distinguishable from the <u>Folger</u> CBA. The relevant language of the <u>Folger</u> CBA stated:

> The company shall continue to have all the rights which it had prior to the employees' selection of the Union as the collective bargaining agent, <u>except those that are specifically given up or modified by the express written terms of the Agreement</u>. Included in the rights reserved to the Company except where they are given up or modified by any of the express written provisions of this Agreement are . . . the determination of the nature and extent of work, if any, to be contracted or transferred out and the persons, means and methods to be utilized.

<u>Id</u>. at 109 n.3 (emphasis added). The court focused on the "exception" language as limiting the subcontracting right, finding that another provision of the Agreement, which stated that subcontracting cannot be used to undermine the Union where the bargaining relationship is already established, limited the subcontracting right. <u>Id</u>. at 111. Taking these two provisions together, the court held that "absent a specific provision which completely and explicitly entitles the Company to contract out regardless of its effect on the bargaining unit, a reasonable interpretation of the contract is that subcontracting must be balanced against the rights of the employees, the Company and the Union. The subcontracting clause is neither specific nor unambiguous." <u>id</u>. at 111. Because arbitrators need only show that

8

the award is rationally inferable in some logical way from the agreement, the arbitrator's award was valid in <u>Folger</u>.[2]

In contrast, the CBA at issue here does not limit the subcontracting right. In fact, the Arbitrator recognized as much by stating that the language of the CBA does not limit Beaird's right to subcontract. In other words, the subcontracting provision is unambiguous.[3] It is well-established that courts may set aside awards when the arbitrator exceeds his contractual mandate by

---

[2]Inasmuch as the Union draws support from <u>Folger</u>, it is our understanding that <u>Folger</u> represents the outer limits of the deference that our court should give to arbitral awards. Although we need not do so in this particular instance because the Beaird CBA is distinguishable, it may be appropriate under other circumstances to reexamine <u>Folger</u> to determine whether this level of deference is warranted by Supreme Court precedent and § 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a).

[3]This court has not often considered the question of an arbitrator's interpretation of a subcontracting clause. <u>Folger</u> is the only published case on point, but this court has also considered the issue in one unpublished opinion. <u>Rock-Tenn Company v. Paper, Allied-Industrial, Chemical and Energy Workers International Union, AFL-CIO, CLC, and Local Union No. 4-0895</u>, No. 03-11062 (5th Cir. Sept. 2, 2004). Although this opinion lacks precedential value, we find its reasoning persuasive and pertinent to the question at hand. The subcontracting language in <u>Rock-Tenn</u>'s CBA provided:

> Nothing in this Agreement shall limit in anyway [sic] the Company's subcontracting work or shall require the company to perform any particular work in this plant rather than elsewhere.

<u>Id</u>. at 4. The court found that the language of the CBA "is clear and express," leaving the arbitrator "without authority to ignore its terms and pursue his 'own brand of industrial justice.'" <u>Id</u>. at 5. The CBA at issue in this proceeding is more akin to the CBA in <u>Rock-Tenn</u> than it is to the one in <u>Folger</u>.

9

acting contrary to express contractual provisions. Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, 889 F.2d 599, 604 (5th Cir. 1989). Although an arbitrator may look beyond the written CBA if it is ambiguous or silent upon a precise question, id. at 602, the Arbitrator has expressly recognized that the CBA is not ambiguous on Beaird's subcontracting right. Although the CBA does qualify the management rights if "specifically provided in this agreement," the Arbitrator points to no provision in the agreement that limits the subcontracting rights. Simply referencing the agreement is insufficient for this court to uphold the award. The Arbitrator must show that the award is rationally inferable in some logical way from the agreement. Folger, 905 F.2d at 111. No such inference can be drawn here to support the Arbitrator's award.

The conclusion that the subcontracting rights were not limited by the CBA should have ended the Arbitrator's inquiry -- the remainder of his decision, which balanced the interests of the Union with Beaird's economic savings, can only be characterized as the Arbitrator's "own brand of industrial justice". We do not affirm the district court's decision to vacate the Arbitrator's award because we disagree with the outcome, but because the Arbitrator has failed utterly to draw his conclusions from the essence of the CBA.

III

10

For the foregoing reasons, the decision of the district court granting Beaird summary judgment and vacating the award of the Arbitrator is

AFFIRMED.

11