**Reverse and Remand; Opinion Filed July 3, 2013.**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-01103-CV**

**NATIONSBUILDERS INSURANCE SERVICES, INC., Appellant**
**V.**
**HOUSTON INTERNATIONAL INSURANCE GROUP, LTD., BUNKER HILL**
**UNDERWRITERS AGENCY, INC. f/k/a BUNKER HILL INTERNATIONAL, LTD and**
**BUNKER HILL UNDERWRITERS AGENCY (CHICAGO), INC., STEPHEN L. WAY,**
**KEVIN CUNNINGHAM, and MICHAEL LEAMANCZYK, Appellees**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 12-06111-G**

**MEMORANDUM OPINION**

Before Justices Moseley, Fillmore, and Myers
Opinion by Justice Myers

Nationsbuilders Insurance Services, Inc. appeals the trial court's order vacating an arbitration award. Nationsbuilders brings five issues contending the trial court erred by vacating and refusing to confirm the arbitration award. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

**BACKGROUND**

Kevin Cunningham and Michael Leamanczyk started an insurance underwriting agency specializing in the heavy-construction market, including crane, rigging, and specialized-transportation risks. In 2006, they sold the agency to Nationsbuilders and went to work there. Their employment contracts with Nationsbuilders included covenants not to compete with Nationsbuilders. In 2010, Cunningham and Leamanczyk left Nationsbuilders and went to work

for Houston International Insurance Group, Ltd. (HIIG), a holding company with numerous companies in many different lines of insurance. Nationsbuilders sued HIIG, Cunningham, Leamanczyk, and Stephen Way (HIIG's chairman and CEO) in multi-state litigation. On May 4, 2011, the parties reached a settlement agreement.

In the agreement, appellees, (who were called the "Way Parties" and the "Restricted Parties") agreed not to compete with the "NBIS Parties," i.e., Nationsbuilders:

> Each of the Way Parties agrees that they . . . shall not, for a period beginning on the [sic] May 4, 2011 and ending May 4, 2012 (the "Restricted Period"), directly or indirectly, whether individually, on their own behalf, or jointly with any other person or entity engage in Competition with the NBIS Parties.

> "Competition" is defined as soliciting, selling, quoting, binding, rating, or producing insurance products in the following markets: (a) concrete pumpers, (b) crane, (c) rigging, (d) residential builders, (e) millwright, specialized transportation and heavy haul customers . . . and (f) current insureds of NBIS. The Restricted Parties also agree during the Restricted Period not to acquire, own or have an ownership interest in, manage, operate, or be employed or engaged by, any person or entity that conducts *or plans to conduct* a business that is in Competition with the NBIS Parties.

(Emphasis added.) The parties also agreed that Delaware law would apply to "any disputes between the Parties" and that the disputes would be arbitrated.

During the restricted period, appellees did not sell, quote, bind, rate, or produce insurance in the prohibited markets. They did, however, begin planning and preparing to sell insurance in those areas as soon as the restricted period expired. They sent out marketing materials to potential customers and potential agents announcing they would be selling "Crane-Rigging, Specialized Transport" insurance beginning in May 2012. They also prepared regulatory filings for state agencies, developed underwriting guidelines for crane and rigging insurance, drafted policy and claim forms, conducted market research, negotiated with re-insurers, and developed and maintained agent/customer lists and relationships.

In January 2012, Nationsbuilders filed an arbitration demand against appellees for breach of the settlement agreement. Nationsbuilders alleged appellees breached the agreement by conducting planning and preparation to enter the crane and rigging insurance field during the restricted period in violation of their agreeing not to plan to conduct a business in competition with Nationsbuilders. Nationsbuilders sought damages as well as specific performance and an extension of the restricted period.

Following a three-day hearing, the arbitrator rendered the arbitration award on May 31, 2012. In the award, the arbitrator determined the settlement agreement:

> not only prohibits the [appellees] from the active conduct of competition, during the restricted period, but also restricts them to a dormant period, which includes no planning to conduct a business that is in competition. Obviously, passive contemplation would not rise to a material level; however, the provision does clearly contemplate and prohibit planning and conduct which would give the [appellees] any business "head start" prior to the conclusion of the restricted period.

The arbitrator found appellees breached the settlement agreement by marketing and soliciting future insurance business and by planning and preparing to sell insurance at the end of the restricted period. "[Appellees'] solicitations, coupled with their planning efforts during the restrictive period, effectively denied [Nationsbuilders] of the bargained for dormant period of non-competition, as provided for in the Settlement Agreement." The arbitrator also determined that Nationsbuilders had not suffered any monetary damages because its "claims of revenue and market loss were hypothetical, inasmuch as [appellees] had not actually sold any competing insurance products during the restricted period." The arbitrator found Nationsbuilders was damaged because "[appellees'] breaches deprived [Nationsbuilders] of the benefit of its bargain, *i.e.*, a one year restricted period with no competition, including solicitations, and no 'head start' planning for competition." The arbitrator determined that Nationsbuilders "be restored the benefit of the bargain it made pursuant to the May 4, 2011 Settlement Agreement." He

–3–

concluded Delaware law supported an equitable extension of the restricted period, and he awarded Nationsbuilders "a 12 month extension of the restricted period in the Agreement until May 5, 2013. During this extended time, [Nationsbuilders] is and shall be entitled to a dormant restricted period of non-competition, including the full extent of the no planning prohibitions, as dictated in this Final Award." He ordered each party to bear its own attorney's fees.

Appellees filed suit in district court to vacate the arbitration award. They alleged the arbitrator exceeded his powers under the federal, Texas, and Delaware arbitration acts by extending the restricted period. They also alleged the award represented a manifest disregard for the law and violated public policy. After a hearing, the trial court determined that appellees' "Motion to Vacate should be granted pursuant to Section 10(a)(4) of the Federal Arbitration Act because the presiding arbitrator . . . 'exceeded [his] powers' or 'so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.'"

## STANDARD OF REVIEW

The Federal Arbitration Act (FAA) permits a court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4) (2012). We review a trial court's decision to confirm or vacate an arbitration award de novo. *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App.—Dallas 2009, pet. denied). In making this review, we are mindful that arbitration of disputes is strongly favored under both federal and Texas law. *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (per curiam). We indulge all reasonable presumptions in favor of the award and none against it. *CVN Group v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). An arbitration award has the same effect as a judgment of a court of last resort, and a court reviewing the award may not substitute its judgment for the arbitrator's merely because the court would have reached a different

–4–

decision. *Id.*; *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.). Arbitration awards are entitled to great deference by the courts "lest disappointed litigants seek to overturn every unfavorable arbitration award in court." *Statewide Remodeling*, 244 S.W.3d at 568 (quoting *Daniewicz v. Thermo Instrument Sys., Inc.*, 992 S.W.2d 713, 716 (Tex. App.—Austin 1999, pet. denied)). Review of an arbitration award is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award. *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied).

In this case, all parties agree the FAA applies to this case. Under the FAA, the only grounds for vacating an arbitration award are those in section 10(a) of the act:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The trial court vacated the award under paragraph (4).

## WHETHER THE AWARD EXCEEDED THE ARBITRATOR'S POWERS

In its first issue, Nationsbuilders contends the trial court erred by vacating the arbitration award on the ground that the arbitrator exceeded his powers. Arbitrators derive their authority from the arbitration agreement, and that authority is limited to a decision of the matters submitted therein, either expressly or by necessary implication. *Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959); *Centex/Vestal*, 314 S.W.3d at 684; *see also Allstyle Coil Co. L.P., v. Carreon*, 295 S.W.3d 42, 44 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (stating scope of

authority depends on the agreement).  Arbitrators exceed their powers when they decide matters not properly before them.  *Ancor Holdings LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.); *Barsness v. Scott*, 126 S.W.3d 232, 241 (Tex. App.—San Antonio 2003, pet. denied).  When determining whether an arbitrator has exceeded his powers, any doubts concerning the scope of what is arbitrable should be resolved in favor of arbitration.  *See Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet.).  It is only when the arbitrator departs from the agreement, and, in effect, dispenses his own idea of justice that the award may be unenforceable.  *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

An arbitrator has broad discretion in fashioning an appropriate remedy.  *Roe v. Ladymon*, 318 S.W.3d 502, 523 (Tex. App.—Dallas 2010, no pet.).  An arbitrator's award is "legitimate only so long as it draws its essence" from the parties' agreement.  *United Steelworkers of Am. v. Enter. Wheel & Car. Corp.*, 363 U.S. 593, 597 (1960); *Ancor Holdings*, 294 S.W.3d at 830.  To draw its essence from the agreement, the arbitrator's award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the . . . agreement. . . . [T]he award must, in some logical way, be derived from the wording or purpose of the contract." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994); *see Ancor Holdings*, 294 S.W.3d at 830 (quoting *Executone*).  "The arbitrator's selection of a particular remedy is given even more deference than his reading of the underlying contract, . . . [and] the remedy lies beyond the arbitrator's jurisdiction only if 'there is no rational way to explain the remedy handed down by the arbitrator as a logical means of furthering the aims of the contract.'"  *Executone*, 26 F.3d at 1325 (quoting *Brotherhood of R.R. Trainmen v. Cent. of Ga. Ry. Co.*, 415 F.2d 403, 412 (5th Cir. 1969)).  However, "[w]here an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy."  *Am. Eagle Airlines, Inc. v. Air Line Pilots*

*Ass'n, Int'l*, 343 F.3d 401, 406 (5th Cir. 2001) (quoting *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989)).

To determine whether an award is beyond the scope of the arbitrator's powers, we look only at the result. "The single question is whether the award, however arrived at, is rationally inferable from the contract." *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219 n.3 (5th Cir. 1990); *see Ancor Holdings*, 294 S.W.3d at 829 ("The award must be derived in some way from the wording and purpose of the agreement, and we look to the result reached to determine whether the award is rationally inferable from the contract.").

The parties first dispute whether the result—the extension of the restrictive covenant— was "rationally inferable from the contract." Appellees argue the extension was not rationally inferable because it does not "draw its essence" from the settlement agreement. We disagree. The agreement required appellees for one year to do no planning to conduct a business in competition with Nationsbuilders. The arbitrator found appellees violated this provision. The remedy of a one-year extension of the restricted period gave Nationsbuilders the benefit of its bargain of a one-year period without appellees preparing to conduct a business in competition with Nationsbuilders. The remedy "[drew] its essence" from this provision and is rationally based on that provision.

Appellees argue that the trial court's vacating the arbitration award was supported by the Fifth Circuit's opinion in *American Eagle Airlines, Inc. v. Air Line Pilots Association, International*, 343 F.3d 401 (5th Cir. 2003). That case involved a collective bargaining agreement between a pilot union and an airline pursuant to the Railway Labor Act, 45 U.S.C. §§ 151–188 (2006 & Supp. V); *see Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 197 F. Supp. 2d 580, 581 (N.D. Tex. 2002). The agreement contained a grievance procedure and an arbitration provision. The agreement authorized the airline to discharge a union member for

"just cause." *Am. Eagle*, 343 F.3d at 403. Under the pre-arbitration grievance procedure, a pilot timely invoking the grievance procedure was entitled to a "first step" hearing within fourteen days of filing the grievance and a written decision on the grievance within fourteen days of the hearing. If the grievance was denied, then the pilot could appeal to the arbitration board. If the grievance hearing or written decision was not timely provided, then the grievance would be presumed to be denied. *Id.* In *American Eagle*, a pilot was discharged for what the airline considered "just cause," and the pilot, through the union, invoked the grievance procedure. *Id.* at 404. The airline did not hold the first-step hearing, so the parties presented the case to the arbitration board. *Id.* The board found the airline breached the agreement by failing to hold the first-step hearing and that the airline had just cause to terminate the pilot. The board concluded that because both the pilot and the airline violated the collective bargaining agreement, both sides should be penalized. The board imposed a ten-week unpaid suspension on the pilot and ordered his reinstatement with back pay for the period he was terminated except for the ten weeks of suspension. *Id.* The airline appealed to the district court, which vacated the arbitration board's ruling. *Am. Eagle*, 197 F. Supp. 2d at 586. The Fifth Circuit affirmed. The court concluded that when a collective bargaining agreement requires just cause for dismissal, and the arbitrator finds there was just cause for dismissal, the "arbitrator acts beyond its jurisdiction by fashioning an alternate remedy." *Am. Eagle*, 343 F.3d at 410. In this case, unlike *American Eagle*, the agreement contained no prescribed penalty for violation of the agreement.

Appellees also cite *Beaird Industries, Inc. v. Local 2297, International Union*, 404 F.3d 942 (5th Cir. 2005). In that case, a collective bargaining agreement gave the company the right "to subcontract out work presently performed in any area of the facility to an independent contractor or another company." *Id.* at 945. The agreement's arbitration provision stated the arbitrator "shall have no authority to substitute his discretion on cases where the Company is

given authority to decide those issues by this Agreement." *Id.* The company contracted out landscaping work that had been performed by union employees, and the company transferred those employees to other landscaping work. *Id.* at 943. The union filed a grievance, and the case proceeded to arbitration. *Id.* The arbitrator found the company's action violated the agreement and ordered the work be returned to the union. *Id.* The federal district court vacated the arbitration award, and the Fifth Circuit affirmed. *Id.* The Fifth Circuit observed, "It is well established that courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions." *Id.* at 946. Because the collective bargaining agreement expressly gave the company authority to contract out work, the company did not violate the agreement by exercising that authority. *Id.* at 946–47.

Both *American Eagle* and *Beaird* involve a distinguishable situation from the case before us. In those cases, the arbitrators concluded the companies violated the agreements by conduct they had the right under the contracts to perform: discharging an employee for just cause, and contracting out work. The arbitrators' awards disallowing this conduct were necessarily contrary to the express contractual provisions authorizing the companies' conduct. By prohibiting conduct expressly authorized by the agreements, those arbitration awards did not draw their essence from the agreements. In this case, appellees do not dispute that the arbitrator correctly determined their conduct breached the no-planning provision of the agreement. The arbitration award ordered the parties to engage in conduct expressly required by the parties' agreement: that appellees go one year without planning a business in competition with Nationsbuilders. We conclude the arbitration award draws its essence from the agreement. Appellees' arguments to the contrary lack merit.

Appellees also argue the trial court did not err by vacating the arbitration award because the arbitrator decided a moot issue. The restricted period under the agreement was from May 4,

2011 to May 4, 2012. The arbitration hearing concluded on April 27, 2012, still within the restricted period, but the arbitrator issued the arbitration award on May 31, 2012, almost four weeks after the end of the restricted period. Thus, the restricted period had expired when the arbitrator imposed "a 12 month equitable extension of the restricted period, as provided in the Settlement Agreement, until May 5, 2013." Appellees assert that enforcement of the restricted period became moot when the period expired under the terms of the contract, May 4, 2012, depriving the arbitrator of subject-matter jurisdiction to enjoin appellees. Appellees rely on cases holding that a suit for specific enforcement of a noncompetition covenant is moot after the contractual period of the covenant expires. *See, e.g.*, *EMC Corp. v. Arturi*, 655 F.3d 75, 77 (1st Cir. 2011) (Massachusetts law); *Gaylord Broadcasting Co. v. Cosmos Broadcasting Corp.*, 746 F.2d 251, 252 (5th Cir. 1984) (per curiam) (Louisiana law); *Econ. Lab., Inc. v. Donnolo*, 612 F.2d 405, 408 (9th Cir. 1979) (Nevada law); *Tansey-Warner, Inc. v. Phelan*, No. Civ. A. 1911-S, 1999 WL 182578 *2 (Del. Ch. Mar. 30, 1999) (Delaware law); *Weatherford Oil Tool Co.*, 340 S.W.2d 950, 952–53 (Tex. 1960) (Texas law).

However, the arbitrator's award was not one of specific performance of the noncompetition provision; the award was an equitable extension of the restricted period under the arbitrator's powers of equity. The parties' settlement agreement provided that "Delaware law will be applicable to any disputes between the Parties." Delaware law permits a court to extend the period of a covenant not to compete when necessary to prevent a party from being deprived of the benefit of the covenant. *See Deloitte & Touche USA LLP v. Lamela*, No. Civ. A 1542-VCP, 2007 WL 1114075, *6 (Del. Ch. Apr. 6, 2007) ("courts have extended a covenant not to compete beyond the contractually specified time period only when the party seeking the extension has a legitimate business interest . . . and that party effectively has been deprived of the benefit of its noncompete covenant"). The concept of equitable extension has also been

recognized under Texas law. *See Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003) (applying Texas law and permitting equitable extension due to litigation delay); *see also Farmer v. Holley*, 237 S.W.3d 758, 761 (Tex. App.—Waco 2007, pet. denied) ("We do not hold that a covenant not to compete cannot be equitably extended" but concluded record did not support equitable extension); *RenewData Corp. v. Strickler*, No. 03-05-00273-CV, 2006 WL 504998, *5 (Tex. App.—Austin 2006, no pet.) (denying equitable extension because delays in enforcement of noncompetition covenant were not inherent to litigation but were attributable to party seeking extension).

Appellees argue that the Fifth Circuit rejected the concept of equitable tolling in its 1984 opinion in *Gaylord Broadcasting*. In that case, the court refused the argument that the covenant not to compete could be equitably tolled due to litigation delays. *Gaylord Broadcasting*, 746 F.2d at 253 n.1. The court concluded that the parties' agreement had to provide for tolling due to litigation delay before a court could extend the noncompetition period. *Id.* The court was applying Louisiana law, however, not Delaware or Texas law, and was interpreting a First Circuit opinion applying Massachusetts law. *See id.* at 252 (citing *A-Copy, Inc. v. Michaelson*, 599 F.2d 450, 452 n.1 (1st Cir. 1978)). When the Fifth Circuit applied Texas law in *Guy Carpenter*, it concluded that Texas law permitted equitable extensions. *See Guy Carpenter*, 334 F.3d at 464.

The arbitration agreement gave the arbitrator authority to apply Delaware law. Delaware law allows for the equitable extension of a noncompetition period. *See Deloitte & Touche*, 2007 WL 1114075, at *6. Equitable extensions are not contrary to Texas public policy. *See Guy Carpenter*, 334 F.3d at 464 (concluding equitable extensions of noncompetition periods allowed under Texas law). Therefore, equitable extension of the restricted period was within the powers

–11–

of the arbitrator.  We conclude the arbitrator did not exceed his powers by awarding an equitable extension of the restricted period to May 5, 2013.  We sustain Nationsbuilders' first issue.

## IMPERFECTLY EXECUTED AWARD

In its second issue, Nationsbuilders contends the trial court erred by vacating the award for being such an imperfect execution of the arbitrator's powers that a mutual, final, and definite award was not made.  Section 10(a)(4) of the Federal Arbitration Act permits a court to vacate an arbitration award when the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter was not made."  9 U.S.C. § 10(a)(4).  The purpose of this provision is "to render unenforceable an arbitration award that is either incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had) or so badly drafted that the party against whom the award runs doesn't know how to comply with it."  *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 725 (7th Cir. 2002).

The arbitration award is styled "Final Award."  The concluding section summarizing the arbitrator's decision states, "[Nationsbuilders] is AWARDED as damages, a 12 month equitable extension of the restricted period, as provided in the Settlement Agreement, until May 5, 2013.  This extended restricted period shall include the full extent of the no planning prohibitions, as dictated in this Final Award . . . ."  In the award, the arbitrator interpreted the no-solicitation and no-planning provisions of the settlement agreement as follows:

> A plain reading of both sentences, in harmony with each other, not only prohibits [appellees] from the active conduct of competition, during the restricted period, but also restricts them to a dormant period, which includes no planning to conduct a business that is in competition.  Obviously, passive contemplation would not rise to a material level; however, the provision does clearly contemplate and prohibit planning and conduct which would give [appellees] any business "head start" prior to the conclusion of the restricted period.  Any other interpretation or application would render the second sentence meaningless.

–12–

Appellees argued in the trial court in their motion to vacate the award that they did not know what they are precluded from doing "due to the vague, non-defined wording of the Award." In their brief in support of the motion to vacate, they quoted the conclusion of the award and stated, "What does this mean? 'Planning' is not a defined term in the Settlement Agreement. [Appellees have] no framework or guidelines dictating exactly what [they are] precluded from doing." They argued that the distinction in the award between "passive contemplation" and "head start" planning made the award unworkable:

> These parameters are arbitrator-created; the Agreement does not mention, much less differentiate, between "passive contemplation" and "head start" planning. This arbitrary reading shows precisely why this Award cannot be enforced. If the Agreement truly were meant to preclude 'planning," then *all* planning would be prohibited, including the "passive contemplation." Obviously, such a prohibition could not be enforced because no tribunal can read [appellees'] mind to determine whether and to what extent [they] are engaged in "passive contemplation." And certainly, what distinguishes "contemplation" from "head start?" If the Agreement is restricted to "material planning," then the Agreement should state as much—which it doesn't. Further, there is no discussion as to what constitutes "material" planning. Does it mean lost business? If so, there was no such planning because, as even the arbitrator found, [Nationsbuilders] sustained no damage.

We reject appellee's arguments. The award does not state that "passive contemplation" is permitted under the settlement agreement; the award states that "passive contemplation would not rise to a material level," meaning passive contemplation would constitute a technical breach of the settlement agreement but "would not rise to" the level of a material breach. Under the award, any planning for "Competition" as defined in the settlement agreement is prohibited. Any planning resulting in a "head start" would be material.

Appellees expressed uncertainty concerning the meaning in the award of the phrase "head start" planning. The meaning of this term is clear: any conduct during the restricted period that would result in appellees engaging in "Competition" as defined by the settlement agreement— "soliciting, selling, quoting, binding, rating, or producing insurance products" in the defined

–13–

markets—after the expiration of the restricted period sooner than they would have been able without the conduct. The award, read as a whole, is sufficiently specific to notify appellees what conduct is permissible.

In their brief on appeal, appellees ask if they "are precluded from making internal communications, external communications, plans, and budgets? From spending money? Where does 'planning' begin and end?" If that conduct—the communications, plans, budgets, and spending—during the restricted period would result in appellees being able to engage in "Competition" after the restricted period sooner than they would be able without the conduct, then the conduct is prohibited by the arbitration award. If the conduct would not do so, then the conduct is not prohibited.

The award does not require reading the minds of appellees. The arbitrator could conclude that appellees' mere thoughts about "Competition," i.e., their "passive contemplation," during the restricted period would not constitute a material breach of the no-planning prohibition because "passive contemplation" without conduct was unlikely to result in appellees' engaging in "Competition" sooner following the expiration of the restricted period.

Appellees also argue the award "gives [Nationsbuilders] carte blanche to interfere in the daily operations of [appellees]." Appellees argue that Nationsbuilders will continue to assert appellees are "planning," and "each year, as the end of the 'restricted period' approaches, [Nationsbuilders] will once again accuse [appellees] of 'planning' and seek a further 'equitable extension' of the restriction on competition to keep [appellees] out of the marketplace in perpetuity." We disagree. Even if Nationsbuilders seeks an equitable extension of the restricted period, it will not be entitled to an extension under principles of equity if appellees have followed the award and not engaged during the equitably extended restricted period in planning for "Competition" prohibited by the award.

We conclude the trial court erred by vacating the award on the ground that the arbitrator so imperfectly executed his powers "that a mutual, final and definite award upon the subject matter submitted was not made." We sustain Nationsbuilders' second issue.[1]

## DISPOSITION

We conclude the trial court erred by vacating the arbitration award for the reasons stated in its order. Nationsbuilders asks that we render judgment confirming the award, remand to the trial court and order the trial court to confirm the award, or order a rehearing before the arbitrator as to the remedy for appellees' breaches of contract. However, appellees had two other grounds for vacation of the award that were not addressed by the trial court. Appellees asserted the award violated public policy because it "serves as an unconscionable restraint on competition" by giving Nationsbuilders "up to four years of freedom from competition in an unrestricted geographic location." Appellees also asserted the award violated public policy because it improperly interfered with appellees' business without appellant having suffered any loss of customers or revenue. Because these claims were not addressed, we remand the cause to the trial court for further proceedings.[2] *See* TEX. R. APP. P. 33.1(a)(2) (requiring, as prerequisite to presenting complaint for appellate review, that "the record must show that . . . the trial court . . . ruled on the request, objection, or motion"); c*f. In re R.R.*, 26 S.W.3d 569, 574 (Tex. App.—Dallas 2000, orig. proceeding) (where trial court had not ruled on other grounds asserted in motion for protective order, those issues were not ripe for appellate review).

---

[1] Due to our sustaining Nationsbuilders' first two issues, we need not address its remaining issues.

[2] As of the date of our opinion, the arbitration award's equitable extension of the restricted period has expired. The parties have not addressed how or whether the expiration of the equitable extension of the restricted period affects this case. Accordingly, we do not address it in this appeal.

–15–

**CONCLUSION**

We reverse the trial court's judgment, and we remand the cause to the trial court for further proceedings.

/Lana Myers/
LANA MYERS
JUSTICE

121103F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

Nationsbuilders Insurance Services, Inc.,
Appellant

No. 05-12-01103-CV    V.

Houston International Insurance Group, Ltd.,
Bunker Hill Underwriters Agency, Inc. f/k/a
Bunker Hill International, Ltd and Bunker
Hill Underwriters Agency (Chicago), Inc.,
Stephen L. Way, Kevin Cunningham, and
Michael Leamanczyk, Appellees

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 12-06111-G.
Opinion delivered by Justice Myers.
Justices Moseley and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellant Nationsbuilders Insurance Services, Inc. recover its costs of this appeal from appellees Houston International Insurance Group, Ltd., Bunker Hill Underwriters Agency, Inc. f/k/a Bunker Hill International, Ltd and Bunker Hill Underwriters Agency (Chicago), Inc., Stephen L. Way, Kevin Cunningham, and Michael Leamanczyk.

Judgment entered this 3rd day of July, 2013.

/Lana Myers/
LANA MYERS
JUSTICE

–17–